2007 ME 50

**Jeffrey MERRILL et al.**

v.

**TOWN OF DURHAM.**

Supreme Judicial Court of Maine.

Argued: Nov. 30, 2006.
Decided: April 10, 2007.

Frank K.N. Chowdry (orally), Jensen Baird Gardner & Henry, Portland, for plaintiffs.

Curtis Webber (orally), Linnell, Choate & Webber, LLP, Auburn, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.*

CLIFFORD, J.

[¶ 1] Jeffrey and Rhonda Merrill appeal from a judgment entered in the Superior

* Justice Howard H. Dana sat at oral argument and participated in the initial conference but retired before this opinion was certified.

Court (Androscoggin County, *Gorman, J.*), affirming the decision of the Durham Board of Appeals, which affirmed a decision of the code enforcement officer denying a building permit to the Merrills. The Merrills contend that the Board erred in concluding that their lot is subject to the provisions of the Town of Durham Back Lot Development Ordinance (BLDO). We are unpersuaded by the Merrills' argument, and we affirm.

## I. BACKGROUND

[¶ 2] The Merrills own lot 36B in Durham. Lot 36B was created in May of 1986 by a conveyance to James and Pamela Brassard. Other lots from the land surrounding lot 36B were also created at that time. Lot 36B measures approximately 300 feet by 300 feet.

[¶ 3] Although the deed to lot 36B states that the lot is "accessible by permanent right of way beginning at the intersection of the Snow Road and Parker Schoolhouse Road to the said stone wall at the northwest corner of the ... described premises," lot 36B does not actually have frontage on any road. The Parker Schoolhouse Road was discontinued as a town way in 1958, and in any event, is separated from lot 36B by a portion of another lot.

[¶ 4] After obtaining a building permit from the Durham Planning Board in 1988, the Brassards built a single family house on lot 36B. Sometime in the early 1990s, the house was destroyed by fire.

[¶ 5] In 1998, the Brassards sold lot 36B to the Merrills. At that time, the lot contained only a burned shell of a house with a concrete slab, leach bed, well, and driveway. In 1999, the Merrills obtained a

building permit from the code enforcement officer to construct a house on the existing slab. The Merrills never built on the lot pursuant to the 1999 permit, however, and the permit later expired. In 2003, the Merrills sought a new building permit, but the code enforcement officer declined to issue the permit pursuant to the BLDO because the lot did not have frontage on any town road.

[¶ 6] The Merrills appealed the denial of the building permit to the Durham Board of Appeals. The Board conducted a hearing in 2003, which was continued to allow the Merrills to explore other access options. The hearing resumed eight months later, after which the Board of Appeals, in detailed findings and conclusions, denied the building permit. The Merrills appealed to the Superior Court pursuant to M.R. Civ. P. 80B,[1] which affirmed the decision of the Board. The Merrills then brought this appeal.

## II. DISCUSSION

### A. Standard of Review

[¶ 7] When the Superior Court acts in its appellate capacity, we review directly the decision of the Board of Appeals. *Peregrine Developers, LLC v. Town of Orono,* 2004 ME 95, ¶ 9, 854 A.2d 216, 219. The Board's findings are reviewed for "errors of law, abuse of discretion, or findings not supported by substantial evidence in the record." *Brackett v. Town of Rangeley,* 2003 ME 109, ¶ 15, 831 A.2d 422, 427. We accord de novo review to the interpretation of an ordinance. *DeSomma v. Town of Casco,* 2000 ME 113, ¶ 8, 755 A.2d 485, 487.

---

1. In the Merrills' appeal to the Superior Court, their amended complaint included independent claims against the Town. The court granted a summary judgment to the Town on those claims. The Merrills also unsuccessfully appealed the Board of Appeal's denial of their request for a variance. The Merrills appeal to us, pursuant to M.R. Civ. P. 80B, only that portion of the Superior Court's judgment, affirming the Board's denial of the requested building permit.

B. A Brief History of the Back Lot Development Ordinance

[¶ 8] The central issue before us is the applicability of the BLDO to lot 36B. The Board determined that lot 36B is subject to the BLDO, and, because the lot does not meet the BLDO's minimum requirements for development, concluded that the Merrills' requested building permit was properly denied.

[¶ 9] The Town of Durham enacted the BLDO in 1988. Prior to that time, the Town's Land Use Ordinance (LUO), which was enacted in 1977, contained provisions regarding back lots. The record contains only excerpts from the 1977 ordinance, and it is not clear what the definition of a "back lot" was at that time. It appears that the 1977 ordinance prohibited the use of back lots for anything other than single family dwellings. Durham, Me., LUO § 4.16 (1977). Single family dwellings were permitted on back lots if the back lot owner also owned and maintained a fifty-foot access way and if the lot met other conditions. Durham, Me., LUO § 4.16.3 (1977).

[¶ 10] In March of 1986, two months before the creation of lot 36B, the Town amended the portion of the LUO governing back lots. By that 1986 amendment, a "back lot" was defined as "any lot or parcel of land which does not have frontage on a town accepted road, or lacks the minimum frontage on a town accepted road, or lacks the minimum frontage as required under Section 4.8 (Spatial Requirements)." Durham, Me., LUO § 4.16 (1986). Additionally, the minimum road frontage required by the 1986 amendments was 300 feet. Durham, Me., LUO § 4.8 (1986).

[¶ 11] In 1988, the Town removed the back lot provisions from the LUO and created a separate Back Lot Development Ordinance containing revised versions of the LUO back lot provisions. Durham, Me., BLDO (1988). In the most recent version of the BLDO, a "back lot" is defined as "[a] parcel of land which does not have any frontage on a Town accepted road." Durham, Me., BLDO § 11(A) (1994). The Board found that lot 36B meets the current definition of a back lot and, in addition, that lot 36B also met the definition of a back lot in the LUO at the time the lot was created in 1986. The parties do not dispute these findings.

[¶ 12] Among other requirements, the BLDO allows the development of a back lot for a single family dwelling when (1) there is a deeded right-of-way that is at least fifty feet wide to an accepted Town road; (2) the metes and bounds description of the right-of-way to an accepted Town road is attached to the building permit application; (3) the right-of-way serves only one dwelling unless it meets subdivision road standards; and (4) the back lot contains a minimum of five acres. Durham, Me., BLDO § 6(A)(1) (1994). The Board concluded that lot 36B could not be developed because it did not meet any of these requirements.[2]

C. The Applicability of the Back Lot Development Ordinance

■ [¶ 13] Although they do not dispute that lot 36B is a back lot as defined by the BLDO, the Merrills argue that because

---

2. The BLDO contains a nonconforming lot provision:
> A single back lot of record, which on the effective date of this Ordinance does not meet the area or width requirements of this Ordinance, may be built upon provided that such lot shall be in separate ownership and not contiguous with another back lot and

that all other provisions of this Ordinance and the Town of Durham's Land Use Ordinance shall be met.
Durham, Me., BLDO § 7 (1994). The Board also found that because lot 36B is contiguous with lot 36, another back lot, it could not be built upon.

the purpose of the BLDO is development of back lots, the back lot ordinance applies only to vacant lots with no improvements. Because lot 36B is already developed, the Merrills contend, the BLDO does not apply to it. We disagree.

 [¶ 14] The BLDO provides: "This Ordinance *shall apply to all back lots as defined.* No back lot may be developed which fails to meet the requirements of this Ordinance." Durham, Me., BLDO § 4 (1994) (emphasis added). The most fundamental rule of statutory construction is that the words used in an ordinance should be given their plain and ordinary meaning. *Kapler v. Kapler,* 2000 ME 131, ¶ 17, 755 A.2d 502, 508. When language in a statute or an ordinance is plain and unambiguous, there is no reason to resort to any other rules of statutory construction, *Merrill v. Sugarloaf Mountain Corp.,* 2000 ME 16, ¶ 11, 745 A.2d 378, 384, and it is unnecessary to inquire into the purpose or intent behind that clear language, *Kapler,* 2000 ME 131, ¶ 17, 755 A.2d at 508.

[¶ 15] The BLDO contains such clear and unambiguous language. By its plain terms, it applies to all back lots, without regard to whether the lot is developed or undeveloped. Indeed, neither the definition of a "back lot," nor section 4 of the BLDO detailing its scope, contains any reference to, limitation on, or language suggesting a different treatment of lots based on whether the lots are developed, partially developed, or undeveloped. Durham, Me., BLDO §§ 4, 11(A) (1994). In short, the Merrills' lot is by definition a "back lot" pursuant to section 11(A) of the BLDO, and the lot is thus not exempt from the provisions of the BLDO. Because the

Merrills' lot does not meet the minimum requirements for development under the BLDO, the Board correctly affirmed the denial of the building permit.

 [¶ 16] Moreover, contrary to the contention of the Merrills that the intent of the BLDO is to deal with only undeveloped lots, the Board's action denying the permit is consistent with the purposes underlying the BLDO as well as the LUO. The real purpose of the BLDO, when it is read in conjunction with the LUO, is to create better land use by eliminating nonconforming uses over time. We have long reiterated this hallmark of land use law. *See, e.g., Shackford & Gooch, Inc. v. Town of Kennebunk,* 486 A.2d 102, 105 (Me.1984) (noting that "the policy of zoning ... is to gradually or eventually eliminate nonconforming uses as speedily as justice will permit") (quotation marks omitted); *see also Brackett,* 2003 ME 109, ¶ 16, 831 A.2d at 427; *Lewis v. Me. Coast Artists,* 2001 ME 75, ¶ 26, 770 A.2d 644, 653; *Total Quality, Inc. v. Town of Scarborough,* 588 A.2d 283, 285 (Me.1991); *Robertson v. Town of York,* 553 A.2d 1259, 1260 (Me. 1989). Consistent with this general purpose, the LUO provides that if the use of a lot or building that is nonconforming is discontinued for two years, then that nonconforming use may not be resumed.[3] Durham, Me., LUO art. V, § III(C) (1994).

[¶ 17] The building on the Merrills' lot was destroyed by fire. Although more than two years had elapsed since the time of the fire, the Merrills applied for and were granted a building permit in 1999 that allowed them to rebuild the house on lot 36B. The Merrills failed to build within the time prescribed by the LUO,[4] however,

---

**3.** To avoid undue hardship on lot owners, however, the LUO also offers owners of nonconforming lots a reasonable time to protect themselves from the harsh application of the law by allowing a nonconforming building or structure damaged or destroyed by fire to be

restored or rebuilt within twenty-four months. Durham, Me., LUO art. V, § IV(B) (1994).

**4.** "[T]he work authorized by a permit must be commenced within twelve (12) months of the date of issuance and must be completed with-

and the permit expired. The Merrills failed to rebuild the home pursuant to the permit, and the lot has not been used as residential property, the only use for back lots that is allowed under the BLDO, for a number of years. *See* Durham, Me., LUO art. V, § IV(B) (2004). The lot has thus lost the grandfathered status that it once had. Lot 36B is now subject to the BLDO, which, on its face, applies to "all back lots" as defined. Because the lot does not meet the minimum requirements of the BLDO for building on a back lot, the permit was properly denied.

The entry is:

Judgment affirmed.

in twenty-four (24) months after the date of commencement." Durham, Me., LUO art. IV, § V (1994).