MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2015 ME 125
Docket:        Cum-14-449
Submitted
  On Briefs:   June 2, 2015
Decided:       September 10, 2015

Panel:         ALEXANDER, and MEAD, GORMAN, JABAR, and HJELM, JJ.


MARY E. CAMPBELL et al.

v.

CITY OF SOUTH PORTLAND et al.


HJELM, J.

[¶1]  Kay Loring owns a small parcel of land located in a residential area of the City of South Portland.  Because of its size, the lot was nonconforming until 1973, when the City issued a variance that brought it into dimensional conformity. For purposes of land use regulation, the 4,703 square foot lot now owned by Loring thereby became the equivalent of a conforming 5,000 square foot lot. Based on the 1973 variance, in 2013 the City's Building Inspector issued a building permit to Loring, authorizing her to construct a single-family house on her lot.  Mary E. Campbell and Maureen and Edward Conroy (collectively, Campbell), who own nearby lots, appealed the issuance of the permit to the South Portland Board of Appeals, which affirmed the Building Inspector's action.  The Superior Court (Cumberland County, *Warren, J.*) affirmed the Board's decision.  Campbell

2

now appeals to us, arguing that the evidence presented to the Board did not support its findings about the size of the lot and the existence of a variance; that the 1973 variance is no longer effective; and that the building permit is not lawful because the proposed development would exceed the density restrictions for that zoning district.[1] Finding no error in the Board's decision, and concluding that Campbell did not preserve her density argument for municipal or judicial review, we affirm.

## I. BACKGROUND

[¶2] In 1973, Gloria and Dominic Maietta owned two abutting parcels of land on Strathmore Road in South Portland. The parcels are in Residential District A. One of these lots, located at 38 Strathmore Road, is now owned by Kay Loring and is the lot at issue here. According to surveys conducted in 1921 and 2008, Loring's lot contains 4,703 square feet. In 1973, pursuant to the ordinance then in effect, development of Loring's lot would have been permitted only if it contained 5,000 square feet. South Portland, Me., Code § 27-63(a) (1973).[2] Dominic successfully applied for a 297 square foot variance from the

---

[1] The evidence before the Board supported its findings about the size of the lot and the fact of the variance. Because we will not substitute our judgment for the Board's, Campbell's challenge to those findings is not persuasive, *see Toomey v. Town of Frye Island*, 2008 ME 44, ¶ 11, 943 A.2d 563, and we do not discuss that argument further.

[2] Under the City's ordinances in effect in 1973, the minimum lot size for the zoning district where Loring's lot is located was 15,000 square feet. South Portland, Me., Code § 27-62(1) (1973). Lots created before the ordinance was adopted were grandfathered and deemed to be conforming if they contained at least 5,000 square feet. South Portland, Me., Code § 27-63(a) (1973). The parties do not

Zoning Board of Appeals,[3] thereby allowing the lot to be treated as if it contained 5,000 square feet. After the Board granted the variance, however, the Maiettas did not build on the lot, and it remains undeveloped.

[¶3] In 2009, after Dominic's death, Gloria sold the lot to Kay Loring. In September 2013, Loring obtained a building permit from the Building Inspector[4] authorizing the construction of a small single family home on the lot. Under the City's current zoning ordinances, the City's Building Inspector is authorized to issue a building permit for development of a lot that is at least 5,000 square feet in size and has at least 50 feet of road frontage. South Portland, Me., Code § 27-134, -304(a). If a lot does not meet both the dimensional and density-related requirements, which regulate the number of dwelling structures in a specified area, then the application must satisfy certain conditions, and only the City's Planning Board may issue a building permit. South Portland, Me., Code § 27-304(a), (g).

---

dispute that the grandfathering provision applied to Loring's lot, and in any event, no appeal was filed from the 1973 variance decision, making that municipal action final.

[3] The record identifies this body variously as the "Zoning Board of Appeals" and the "Board of Zoning Appeals." Those titles refer to the same body, which is the predecessor to the "Board of Appeals" that was a tribunal in this action.

[4] In their briefs, the parties indicate that the permit was issued by the City's Code Enforcement Officer. The City's land use ordinances, however, designate the Building Inspector, and not the CEO, as the municipal official who is authorized to issue building permits. *See* South Portland, Me., Code § 27-134. The parties have not included the 2013 building permit in the record on appeal, and so we cannot determine directly who issued that permit. Because Campbell has not raised any issue about whether the appropriate City official issued the permit (arguing instead that it should not have been issued in the first place), we assume that the permit was issued by the person who had authority to do so, which, under the ordinance, would be the Building Inspector.

4

[¶4]  Campbell appealed the issuance of the building permit to the Board of Appeals and submitted a twelve-point "addendum" listing her challenges to the permit, which included claims, among others, that a variance actually had not been granted; that if a variance was granted, it was no longer in effect when the building permit was issued; and that Loring's lot contains less than 4,703 square feet, so that even if the 297 square foot variance is considered, the lot does not meet the 5,000 square foot requirement.  Campbell's addendum did not list density standards, described in the ordinance as "space and bulk restrictions," as a basis for the appeal.

[¶5]  The Board held a hearing on December 4, 2013, and January 8, 2014. During her oral presentation to the Board, Campbell argued the points in her addendum, but she also contended that construction of a building on Loring's lot would violate the applicable density restrictions.  On the second hearing date, after the parties completed their presentations, the Board voted to deny Campbell's appeal, and it issued a written decision on January 14, 2014.  In its decision, the Board found that Loring's lot contains 4,703 square feet; that a variance was granted in 1973 so that the lot is considered to be a 5,000 square foot lot; and that the variance is still effective.  The Board did not address the question of whether construction of a structure on Loring's lot would comport with the density restrictions applicable to Residential District A.

[¶6]  Pursuant to M.R. Civ. P. 80B and 5 M.R.S. § 11002 (2014), Campbell filed a complaint with the Superior Court, which affirmed the Board's decision and denied her subsequent motions for reconsideration and further findings of fact.[5] Campbell appealed.

## II.  DISCUSSION

[¶7]  On a Rule 80B appeal, we review directly the operative decision of the municipality and not the judgment of the Superior Court. *Fitanides v. City of Saco*, 2015 ME 32, ¶ 8, 113 A.3d 1088.  Here, the parties agree that the operative decision is the Board's.  We separately consider Campbell's arguments that the 1973 variance, which was the predicate to the existence of the Building Inspector's authority to issue the building permit, was no longer in effect when the permit was issued, and that the building permit was issued in error because the resulting development would violate the City's density restrictions for Residential District A.

A.    Effectiveness of the 1973 Variance

[¶8]  Campbell first contends that the Board erred in affirming the decision to issue the building permit because, she argues, the 1973 variance necessary for

---

[5]  Campbell's Rule 80B appeal was based entirely on the record before the Board and arguments of law.  Consequently, she did not raise any claims that would result in factual findings issued by the court. *See* M.R. Civ. P. 80B(d) (establishing the procedure for a trial of the facts as part of a Rule 80B appeal, which Campbell did not seek to invoke here).  That part of Campbell's motion that requested the court to issue findings of fact was therefore misplaced.

6

the Building Inspector to have authority to issue the permit is no longer effective. According to her argument, Loring's lot must be treated as a lot with 4,703 square feet rather than one with 5,000 square feet as allowed under the 1973 variance, and the permit therefore may be issued only by the City's Planning Board. As support for her argument that the variance expired before the building permit was issued in 2013, Campbell relies on section 27-302(b) of the City's zoning ordinance, which governs variances from nonconforming uses, and provides, "A nonconforming use is terminated if the use ceases or is abandoned for any reason for a period of two (2) years or more." South Portland, Me., Code § 27-302(b).[6] Because neither Loring nor her predecessors in title actually built on the lot within two years of the issuance of the variance in 1973, Campbell argues that the variance expired and is no longer in effect, Loring's lot reverted to one that is treated as having an area of 4,703 square feet, and the Building Inspector therefore was without authority to issue the permit.

[¶9] The variance that Maietta sought and received in 1973, however, was based on the size of the lot and not its use. The provisions governing the variance

---

[6] The version of the ordinance that was in effect when the variance was granted in 1973 provided that a grandfathered nonconforming use would expire if it was abandoned for more than one year, rather than the two-year limitation period now in effect. *See* South Portland, Me., Code § 27-77 (1973). We need not decide the nature of any interplay among these ordinances and the dimensional variance ordinances that were in effect in 1973 and 2013, because we conclude that for different reasons set out in the text, the vitality of the 1973 dimensional variance is not affected by any ordinances that terminate the lawfulness of non-conforming land uses.

therefore are not found in section 27-302, which applies to variances from nonconforming *uses*. Instead, at best for Campbell, *see supra* n.6, the 1973 variance is now controlled by section 27-304, which establishes dimensional requirements of minimum lot size and road frontage. Section 27-534 generally prescribes a minimum lot size of 12,500 square feet, although section 27-304 sets forth the 5,000 square foot requirement for certain qualifying lots. Maietta had obtained a variance so that the lot, for purposes of the ordinance, would be treated as a conforming 5,000 square foot lot. *Cf. Sawyer Envtl. Recovery Facilities, Inc. v. Town of Hampden*, 2000 ME 179, ¶ 19, 760 A.2d 257 (holding that "a use permitted by a variance becomes conforming under the ordinance that authorizes the issuance of the variance."). That variance was therefore only as to the size of the lot.[7] Because section 27-302 does not apply to a *dimensional* variance, the two-year expiration period created in that provision is inapplicable.

[¶10] Unlike section 27-302, a dimensional variance granted under section 27-304 does not expire if a certain event, such as development, fails to occur within a specified period of time. Further, nothing in the enabling statute, 30-A M.R.S. § 4353(4-C) (2014), creates such an effect. Therefore, the local and

---

[7] The difference between dimensional variances and land use variances is further illustrated in state law that authorizes municipalities to adopt ordinances that permit a local board to grant variances specifically from applicable dimensional standards. *See* 30-A M.R.S. § 4353(4-C) (2014). Section 27-304 falls within that statutory authorization extended to municipalities.

state legislation at issue here does not support Campbell's contention that the 1973 variance expired.

[¶11] Campbell goes on to argue, however, that as a matter of policy, variances should not be of unlimited duration. We have held to the contrary when an ordinance does not provide for the expiration of a variance. *See DeSomma v. Town of Casco*, 2000 ME 113, ¶ 13, 755 A.2d 485. Because Campbell has not identified any law that imposes a temporal limitation on a variance when the ordinance itself does not create such a limitation, Campbell's argument instead raises a policy issue that can only be properly addressed and decided through local legislation. Although the temporal effect of the 1973 dimensional variance at issue here is open-ended, Loring must still comply with contemporary land use standards applicable to conforming lots that are 5,000 square feet in size because the 1973 variance allowed her lot to be treated as if it were a conforming lot of that size. In this way, the City retains ongoing regulatory control over the use of the lot.

[¶12] Therefore, because the 1973 dimensional variance governed by section 27-304 of the City's ordinance and 30-A M.R.S. § 4353(4-C) was not subject to a temporal limitation, it was still in force when the building permit was issued in 2013, and because Loring's lot is still to be treated as a 5,000 square foot parcel, the Building Inspector was authorized to act on Loring's permit application.

B.    Density Limitation

[¶13]  Campbell next argues that the building permit was improperly issued because the proposed permitted development on Loring's lot will violate the density limitations prescribed in section 27-534 of the City's ordinance.

[¶14]  Section 27-304(a) of the City's ordinance authorizes the issuance of a permit for construction on a lot—such as Loring's, because of the 1973 variance— that has as little as 5,000 square feet and fifty feet of street frontage, only if the lot "conform[s] to the space and bulk regulations for the zoning district in which it is located except for the minimum lot area and minimum street frontage requirements . . . ."  South Portland, Me., Code § 27-304(a).  For the zoning district in which Loring's lot is located, the "[m]aximum net residential density" is "[f]our (4) dwelling units per net residential acre."  South Portland, Me., Code § 27-534. Campbell argues that it is impossible for Loring's lot to be developed without violating that density restriction.

[¶15]  We do not reach the merits of this contention, however, because Campbell did not properly present this challenge to the Board and therefore has not preserved it for judicial review.  The City's ordinance itself establishes the notice requirement that an appellant must meet in order to pursue a particular argument before the Board.  That local legislation provides that a notice of appeal to the Board "shall be filed with the Department of Planning and Development on forms

approved by the Board of Appeals, *and the aggrieved person shall specifically set forth on said form the grounds for said appeal.*"   South Portland, Me., Code § 27-154(a) (emphasis added).  Here, as part of her notice of appeal to the Board, Campbell submitted a written list of twelve specific challenges to the building permit issued to Loring.  The density issue was not included among those challenges.  Consequently, Campbell did not satisfy the notice requirement created in section 27-154(a), which was the necessary predicate for her to pursue a challenge based on the density criteria.  Several times during her oral presentation to the Board, Campbell noted that development on Loring's lot would violate the applicable density requirements.  These oral references, however, did not cure her initial failure to comply with the written notice requirement in section 27-154(a), which foreclosed her opportunity to pursue the issue before the Board.

[¶16]  By requiring an appellant to expressly identify those issues that she seeks to present to the Board, section 27-154(a) establishes an organizational structure for the administrative proceeding.  Additionally, section 27-154(a) further provides the Board and other interested parties with reasonable notice and an opportunity to address those issues that may warrant the presentation of evidence and argument at the proceeding.  The requirement of notice also ensures that the Board will be attentive to matters relating to those issues that are properly raised.

[¶17] Given this procedural requirement, it is telling that in its decision affirming the issuance of the building permit, the Board did not address the density issue that Campbell raised orally, in contrast to the Board's methodical consideration of each of the twelve issues enumerated in Campbell's written addendum. Under section 27-154(a), the Board was not required to determine whether the density requirement precluded issuance of the permit, because it was not one of the grounds that Campbell "specifically set forth" in the notice of appeal filed with the Board. Instead, when the Board addressed each of the twelve arguments that Campbell properly raised in the notice of appeal, it ruled on those issues that were in order for decision. The Board was not required to do more.

[¶18] Therefore, despite the clear requirements of the ordinance, Campbell failed to assert a proper and timely challenge to the issuance of the permit based on density. As a result, that issue was not in order for decision by the Board, and Campbell may not raise the issue collaterally for judicial review. *See, e.g., Wells v. Portland Yacht Club*, 2001 ME 20, ¶ 5, 771 A.2d 371.

The entry is:

Judgment affirmed.

**On the briefs:**

John S. Campbell, Esq., Campbell & Associates, P.A., Portland, for appellants Mary E. Campbell and Maureen and Edward Conroy

Gene R. Libby, Esq., and Tyler J. Smith, Esq., Libby O'Brien Kingsley & Champion, LLC, Kennebunk, for appellee Kay Loring

Daniel L. Cummings, Esq., Norman Hanson & DeTroy, LLC, Portland, for appellee City of South Portland

Cumberland County Superior Court docket number AP-2014-12
FOR CLERK REFERENCE ONLY