STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
Docket No. AP-14-049

DEVIN DEANE,

Petitioner

DECISION AND ORDER

v.

CITY OF SOUTH PORTLAND,
et al.,

Respondents

Before the court is petitioner Devin Deane's Rule 80B appeal. He challenges respondent City of South Portland's issuance of a building permit to WG Enterprises, LLC and the subsequent denial of petitioner's appeal to the South Portland Board of Appeals (Board). For the following reasons, the decision of the Board is vacated and the case is remanded for further proceedings consistent with this decision and order.

FACTS

Petitioner and his wife own lots 222 and 223 at 87 Thirlmere Avenue in South Portland. (R. 2, 19, 49.) Their property abuts lots 159, 160, and 161 on the Country Club Heights Subdivision Plan. (R. 19.) Lot 159 is 2,978 square feet, has more than 90 feet of street frontage, and was unimproved as of 7/1/14, the date of WG Enterprises' application for a building permit. (R. 19, 30, 46.) Lot 160 is 3,000 square feet, has 30 feet of street frontage, and was unimproved as of 7/1/14. (R. 19, 30, 46.) Lot 161 is 3,002 square feet, has 30 feet of street frontage, and has a single family home. (R. 19, 46, 50.) Lots 159 and 160 previously contained a garage, two driveways, and a lawn. The garage was demolished and a new house was constructed on lots 159 and 160. This house is the subject of this appeal. (R. 48, 50-52, 111.)

Lots 159, 160, and 161 are located in Residential District A of the South Portland Code of Ordinances (Code). (R. 33.) The Code specifies the purpose of Residential District A: "To provide residential areas within the City of South Portland of medium density in a manner which will promote a wholesome living environment. To this end residential development shall not exceed four (4) dwelling units per net residential acre . . . ." (Code § 27-531; R. 263.) District A has the following space and bulk regulations: maximum four dwelling units per net residential acre, minimum 12,500 square foot lot area, minimum street frontage of 75 feet, maximum building coverage of 25% per lot, minimum front yard of 20 feet, minimum side yard of 6 feet, minimum rear yard of 20 feet, and two 9 by 18 foot off-street parking spaces per lot. (Code §§ 27-534, 27-1556; R. 265-66, 546-47.) Lots 159, 160, and 161 are all nonconforming with respect to District A's space and bulk regulations because each contains fewer than 12,500 square feet. (R. 19.) In addition, lots 160 and 161 contain fewer than 75 feet of street frontage, and lot 161 does not contain off-street parking. (R. 19, 102-103, 112.)

The Code provides exceptions for the development of nonconforming lots subject to the provisions of section 27-304(f) and (g). (Code § 27-304; R. 244.) Section 27-304(f) provides "[s]tandards for the development of all nonconforming lots of record." (Code § 27-304(f); R. 246.) Section 27-304(g) provides "[a]dditional requirements for the development of lots of record with fewer than 5,000 square feet of lot area or fewer than fifty (50) feet of street frontage." (Code § 27-304(g); R. 247.) Section 27-304(e) provides:

> An unimproved nonconforming lot of record that abuts and is in common ownership with a developed lot and that has frontage on a City accepted street may be developed and/or sold as a separate lot without a variance from the Board of Appeals subject to the provisions of (f) and (g). The division of the lots shall conform to the original lot boundaries as described in a recorded deed or subdivision plan unless revised boundaries will make all of the lots less nonconforming with respect to the space and bulk regulations for the zoning district in which they are located.

2

(Code § 27-304(e); R. 246.)

On June 3, 2014, Robert Blackadar conveyed lots 159, 160, and 161 to AMG Properties, LLC. (R. 20.) By application dated 6/6/14, listing Robert Blackadar as owner, a building permit was sought to demolish a garage on lots 159 and 160. (R. 23-26.) The building permit issued on 6/10/14. (R. 23.) The garage was demolished. (R. 90-91.) On June 13, 2014, AMG Properties conveyed lot 161 to Dye Custom Builders, LLC and lots 159 and 160 to WG Enterprises.[1] (R. 28-32.)

On July 1, 2014, WG Enterprises applied for a building permit from respondent City to construct a three-bedroom single family home with a two-car garage on lots 159 and 160. (R. 33-41.) WG Enterprises' development on lots 159 and 160 is the fifth dwelling unit within the residential acre. (R. 13, 102-03.)

On August 5, 2014, respondent City issued a building permit to WG Enterprises. (R. 47.) By letters dated 7/24/14 and 8/1/14, petitioner expressed concern regarding this process. (R. 42-45.) By letter dated 8/6/14, respondent City's Code Enforcement Officer informed petitioner of the issuance of the permit to WG Enterprises. (R. 46-47.)

Section 27-304(g) of the Code imposes the following requirements for development of nonconforming lots of fewer than 5,000 square feet: a written application to the Planning Board, a pre-application conference between the applicant and the Planning and Development Department, notice to neighbors, a public hearing, Planning Board approval, and consideration of additional standards in granting approval, including a requirement that at least 25% of the lot be landscaped open space. (Code § 27-304(g); R. 247-51.) Respondent City's Code Enforcement Officer determined it was not required to follow the requirements under section 27-304(g) when issuing this

_____

[1] At the time of the filing of the amended petition, it appears Donald and Pamela Brunmier owned lot 161 and Wei Zhang and Lesley Mo owned lots 159 and 160. (Am. Pet. ¶¶ 6-9.)

3

permit. (R. 46-47; 65-67.) After notification that the permit was issued, petitioner appealed. (R. 1.) The Board held a public hearing, which petitioner attended. (R. 86-163, 171-77.)

The Board agreed with the Code Enforcement Officer's determination that combining the square footage and frontage of lots 159 and 160 permitted the issuance of the building permit without Board review and without compliance with the approval requirements specified in section 27-304(g). (R. 46-47, 152-58.) In her submission to the Board during petitioner's appeal, the Code Enforcement Officer attached a copy of section 27-304 that did not contain the text of 27-304(g) because she concluded that section did not apply. (R. 65-71.)[2] The Board agreed and denied petitioner's appeal. (R. 157-58, 166-68, 177.) On 10/29/14, petitioner filed his Rule 80B complaint and on 2/3/15, an amended complaint.

DISCUSSION

1. Standard of Review

The party challenging the decision of a municipal board has the burden of demonstrating an error of law, an abuse of discretion, or findings not supported in the record. Aydelott v. City of Portland, 2010 ME 25, ¶ 10, 990 A.2d 1024. The court reviews the interpretation of municipal ordinances de novo. Nugent v. Town of Camden, 1998 ME 92, ¶ 7, 710 A.2d 245. "[T]he words used in an ordinance should be given their plain and ordinary meaning." Merrill v. Town of Durham, 2007 ME 50, ¶ 14, 918 A.2d 1203. The court may "affirm, reverse, or modify the decision under review or may remand the case . . . ." M.R. Civ. P. 80B(c).

---

[2] During the hearing, petitioner offered his exhibit 18, a copy of section 27-304 that included section 27-304(g). The Board voted and declined to admit exhibit 18 into the record. (R. 139-141.)

4

2. Standing

WG Enterprises, AMG Properties, LLC, Wei Zhang, and Lesley C. Mo argue that petitioner does not have standing because he has not alleged a particularized injury. "Any party may take an appeal, within 45 days of the date of the vote on the original decision, to Superior Court from any order, relief or denial . . . ." 30-A M.R.S. § 2691(3)(G) (2015). A "party" is defined as one who has appeared before the board and is able to demonstrate a particularized injury as a result of the board's action. Sahl v. Town of York, 2000 ME 180, ¶ 8, 760 A.2d 266. When the appeal involves land use and the party's land abuts the land at issue, "a reasonable allegation of a potential for particularized injury is all that is necessary . . . ." Pearson v. Town of Kennebunk, 590 A.2d 535, 537 (Me. 1991). An allegation that the abutting property violates a zoning ordinance meets this minimal standard. Rowe v. City of S. Portland, 1999 ME 81, ¶ 4, 730 A.2d 673.

Petitioner appeared before the Board and his property abuts the land at issue. In addition, he alleges that the Board's action violates the Code and will cause the following injuries to him: "unpleasant living conditions, loss of privacy, increased noise, decreased property values, and increased undesirable traffic patterns, vehicle noise, and emissions, among other things." (Am. Compl. ¶ 45; see R. 52, 137-38, 145, 152.) These allegations are sufficient to establish a potential for particularized injury under the minimal standing requirements for Rule 80B zoning appeals.

3. Compliance with the Code

Petitioner argues that the Board has avoided section 27-304(g)'s requirements by "merging" lots 159 and 160 to create one lot of more than 5,000 square feet. The 2006 Code provided for merging lots to render them buildable. Similar language was omitted from the current Code. (Compare R. 246-51, with 599-600.) Respondent City

5

counters that the 2006 Code's inclusion in the record is improper because the Board did not consider the 2006 Code in its decision. Respondent City further argues that the Board's decision is permissible under section 27-304(e), which allows an applicant to revise the boundaries of an unimproved nonconforming lot that abuts and is in common ownership with a developed lot if the revised boundaries will "make all of the lots less nonconforming." (Br. of Resp. 9-10; R. 246.)

1. Objection to the 2006 Code

Respondent City argues that the 2006 Code's inclusion in the record is improper because the Board did not consider the 2006 Code in its decision. Petitioner responds that the Board did consider the 2006 Code because it applied the merger exception contained within it.[*] Rule 80B(e) governs the materials that petitioners may submit as the record in Rule 80B appeals:

> The record shall include the application or other documents that initiated the agency proceedings and the decision and findings of fact that are appealed from, and the record may include any other documents or evidence before the governmental agency and a transcript or other record of any hearings.

M.R. Civ. P. 80B(e). "If the agency decision was based on or referenced a municipal ordinance . . . a copy of the relevant section or sections of the ordinance . . . must be included in the record." 3 Harvey, Maine Civil Practice § 80B:5 at 443 (3d ed. 2011). Here, the Board referenced the merger provision in the 2006 Code when it discussed combining two lots to create a "buildable lot," a term that appeared in the 2006 Code but does not appear in the current Code. (R. 152.) Inclusion of the 2006 Code is not critical because the issue is whether the Board's decision is authorized under the current

_____

[*] Petitioner's argument that the court should take judicial notice of the 2006 Code is without merit. See Mills v. Town of Eliot, 2008 ME 134, ¶ 23, 955 A.2d 258 ("[W]e do not take judicial notice of ordinances.").

Code. Inclusion is permissible, however, because the Board referenced the 2006 Code, and the 2006 Code provides context for the Board's decision.

Respondent City further argues that petitioner has not preserved his argument under the 2006 Code because he did not raise this issue before the Board. Petitioner argues that he did not raise the argument before the Board because he did not become aware that respondent City was applying the merger provision until after the hearing. The failure to raise issues at the administrative level constitutes a waiver of those issues. McLaughlin v. Machias Sch. Comm., 385 A.2d 53, 56 (Me. 1978). In this case, petitioner could not have known that the Board may have relied on the 2006 Code until the Board's reference to "buildable lots" at the administrative appeal and petitioner's subsequent research of respondent City's archives. This is in contrast to a situation where a petitioner asserts for the first time a statutory interpretation argument that could have been apparent to the petitioner at the time of the administrative appeal. See Campbell v. City of S. Portland, 2015 ME 125, ¶ 18, 123 A.3d 994 (holding that petitioner was precluded from raising challenge to compliance with density limitation because he had not included it in his notice of appeal to the Board). Petitioner's argument under the 2006 Code is not precluded.

2. The 2006 Code and Section 27-304(e)

Petitioner argues that the City's abolishment of the merger provision in the current Code means that the City can no longer merge lots. "[A] material change of a statute by amendment . . . evidences a purpose and intent to change the effect of the existing law." In re Bangor & A.R. Co., 188 A.2d 485, 489 (Me. 1963); see also Labbe v. Nissen Corp., 404 A.2d 564, 568 (Me. 1979) (holding that enactment of additional provision showed an intent to change the law). The 2006 Code prohibited development on any lot of fewer than 5,000 square feet but allowed the Board to merge two or more

7

nonconforming lots of fewer than 5,000 square feet to create a "buildable lot" of more than 5,000 square feet. (2006 Code § 27-7(h)(1), (5)(i); R. 599-600.) In 2007, the City abolished the merger exception and enacted in its place section 27-304, which allows development on lots of fewer than 5,000 square feet but only according to the additional requirements of section 27-304(g). (Code § 27-304; R. 244-51).

This change suggests that respondent City is now willing to allow development on lots of fewer than 5,000 square feet but wants to ensure this development is carefully regulated under the additional requirements of 27-304(g). Jerry Jalbert, a former mayor and former member of the Zoning Board of Appeals and Planning Board of South Portland explained at the hearing before the Board that respondent City changed the ordinance to address the City's housing shortage but wanted to ensure development conformed with the character of the neighborhood. (R. 131-33); see also Natale v. Kennebunkport Bd. of Zoning Appeals, 363 A.2d 1372, 1374 (Me. 1976) (stating that the court interprets zoning ordinances according to the "overall scheme envisioned by the municipality"); (Code § 27-111; R. 180) (declaring that one purpose of the Code is "to prevent overcrowding of real estate"). The abolishment of the merger provision protected the section 27-304(g) requirements because, otherwise, the Board could use that provision to avoid them. If respondent City wanted to include the merger provision in the current Code, it could have done so by codifying the same language from the 2006 Code.

Respondent City counters that the Board did not rely on the merger exception

8

and instead relied on section 27-304(e) of the current Code.[*] Respondent City argues that this provision allowed the Board to aggregate lots 159 and 160 because those lots abut lot 161, a developed lot, and the aggregation created one lot of 5,978 square feet, which is closer to the minimum 12,500 square feet and therefore less nonconforming. (See, e.g., R. 122.)

These lots are not, however, in common ownership. Prior to June 13, 2014, AMG Properties held all three lots in common ownership, but at the time of WG Enterprises' application for a building permit on July 1, 2014, the lots were owned by separate companies. (R. 28-33.) In addition, the development adds a fifth dwelling unit, making lots 159 and 160 more nonconforming with respect to the residential density. (R. 102.) Even if the revised boundaries rendered lots 159 and 160 less nonconforming, the revised boundaries do not make "all of the lots less nonconforming" because they do not increase lot 161's square footage or street frontage, or otherwise make lot 161 more compliant with the space and bulk regulations. (See R. 47, 153-54.) Lot 159 also does not abut lot 161 and therefore does not qualify as an "unimproved nonconforming lot of record that abuts ... a developed lot" under section 27-304(e). (R. 19.) As a result, respondent City cannot rely on section 27-304(e).

CONCLUSION

The Board erred as a matter of law by failing to follow the requirements of section 27-304(g). Lots 159 and 160 cannot be merged because the merger provision in the 2006 Code was abolished and section 27-304(e) does not allow aggregating lots

[*] Petitioner's argument that section 27-304(e) does not apply because the "merged" lots are not lots of record is unpersuasive. (Br. of Pet. 19.) Section 27-304 applies only to "lots of record" and defines this term as a lot that was recorded prior to October 21, 2007. (Code § 27-304; R. 244.) All three lots were recorded prior to 1915, (R. 19), which brings them under section 27-304. The Board can then revise these boundaries under section 27-304(e), if the revision meets the requirements set forth in that section. In other words, the revised lot need not be recorded prior to 2007 in order for the Board to apply section 27-304(e).

9

when the lots are not in common ownership and the aggregation will not make all lots less nonconforming. Lots 159 and 160 each have fewer than 5,000 square feet and can be developed only pursuant to section 27-304(g).

The entry is

> The Decision of the City of South Portland Board of Appeals is VACATED. This Case is REMANDED for further proceedings consistent with this Decision and Order.

Dated: February 5, 2016

Nancy Mills
Justice, Superior Court