Jeanne **FARLEY**

v.

**TOWN OF LYMAN et al.**

Supreme Judicial Court of Maine.

Argued Jan. 4, 1989.
Decided April 3, 1989.

Robert H. Furbish (orally), Thomas S. Coward, Smith & Elliott, Saco, for plaintiff.

William H. Dale (orally), David E. Bauer, Jensen, Baird, Gardner & Henry, Portland, for defendants.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and HORNBY, JJ.

McKUSICK, Chief Justice.

Plaintiff Jeanne Farley was denied a permit to build a house on a 3.7-acre lot in Lyman that her parents gave her shortly before the Town raised the applicable minimum lot size to 5 acres. The Lyman Zoning Board of Appeals denied her appeal on the ground that her lot lost its status as a nonconforming lot of record when she conveyed the land to her sister, the owner of an abutting lot; the Board reasoned that upon coming into single ownership the two undersized lots merged under the Lyman zoning ordinance and ceased to be separately buildable. Plaintiff sought judicial review under M.R.Civ.P. 80B. The Superior Court (York County; *Fritzsche, J.*) affirmed, and on appeal we do the same.[1]

On February 8, 1979, plaintiff's parents, Maurice and Cecile Dion, recorded the "Plan Showing the Dion Family Estates: Lyman, Maine" in the York County Registry of Deeds. Their recorded plan divided a 37-acre tract of land they had purchased about three years before into twelve lots,

one for each of their ten children and two grandchildren. Executing that plan, Maurice and Cecile conveyed Lot 12, of about 3.7 acres, to their daughter Jeanne (then named Jeanne Dion Trafton), the plaintiff in the present action, by a deed recorded on February 22, 1979. Sixteen days later the Town amended section 3.5 of its zoning ordinance to raise the minimum lot size for the general purpose district, which encompassed the Dion Family Estates, from 80,000 square feet (about 1.84 acres) to 5 acres.

On December 12, 1979, plaintiff conveyed Lot 12 to her sister Diane Dion, who has owned the contiguous Lot 11, of roughly the same size as Lot 12, at all relevant times. Late in 1982 plaintiff first approached the Lyman building inspector seeking a permit to build a home on Lot 12. At that time, as plaintiff later explained to the Board of Appeals, her sister had executed a contract to reconvey Lot 12 to her. The reconveyance took place on July 11, 1983.

The dispute involving plaintiff's building permit application led to a complex set of proceedings before a number of municipal officials and agencies, including four hearings before the Board of Appeals. Most issues raised therein were later resolved, and the procedural history relevant to this appeal may be limited to the following: The building inspector initially denied plaintiff's application on a ground no longer at issue; namely, that the Dion Family Estates was an illegal subdivision.[2] Later, both the building inspector and the code enforcement officer denied plaintiff's application on the ground that the undersized Lots 11 and 12 had merged,[3] and the Board

---

1. This appeal is the remnant of a multiparty consolidated action that was originally broader in scope. A consent order entered by the Superior Court (*Delahanty, J.*) on November 9, 1987, eight months prior to the judgment now appealed, settled all other matters. In particular, plaintiff's brother Robert Dion, whose building permit application was considered jointly with plaintiff's in various municipal proceedings, has received his building permit and is no longer a party to this case. His application did not raise any question about merger of lots.

2. Instead of seeking subdivision approval from the Town, plaintiff's parents had recorded with their plan an advisory opinion of the Department of Environmental Protection that the project fell within a statutory exemption from subdivision regulation as a "gift to a person related to the donor ... unless the intent of that gift is to avoid the objectives of this section." 30 M.R.S.A. § 4956(1) (Pamph.1988), *recodified as amended at* 30-A M.R.S.A. § 4551(1)(C) (Pamph.1988).

3. At one stage in the proceedings, plaintiff had obtained the then-code enforcement officer's

of Appeals affirmed at its fourth hearing on November 30, 1983.

On appeal we review the record before the Board of Appeals directly because the Superior Court in affirming the Board acted as an intermediate appellate tribunal. *See Your Home, Inc. v. Town of Windham,* 528 A.2d 468, 470 (Me.1987). Plaintiff asserts two grounds for her challenge to the Board's determination that Lots 11 and 12 had merged for building permit purposes. First, she contends that the lots were at all times in separate ownership because she never made a full conveyance to her sister, but only one in trust. Second, she contends that the lot merger provision applied by the Board does not affect contiguous lots that were in separate ownership at the time the minimum lot size requirement was adopted, even if they did later come into common ownership.

I.

▮ Plaintiff's first contention, that the lot at all times satisfied the requirement that it not be "contiguous with any other lot in the same ownership," Lyman, Me., Zoning Ordinance § 1.4.5.1A (January 2, 1976, renumbered March 10, 1979), is based on a theory that she retained equitable title to Lot 12, even while record title was in her sister. Plaintiff asserts that she conveyed Lot 12 to her sister while in the midst of marital difficulties leading to a painful divorce, and that there was an oral understanding that her sister would only "hold it for me until I got it back." She argues that the circumstances of the conveyance "could have given rise to the imposition of a constructive trust in the event that Diane had failed to reconvey Lot 12 to [her]."

The purported trust, however, is here raised not *against* plaintiff but *by* plaintiff. She herself asserts this trust in her own favor against the Town, a stranger to the transaction with every justification for relying on record title. To prove that there might have been a constructive trust had the transaction gone differently would not suffice. The question is whether what did in fact happen, not in the hypothetical future but in the actual past, was sufficient to prevent Diane Dion from *ever* having been the "owner" of Lot 12 despite the three and a half years she held record title. Plaintiff's conveyance of Lot 12 was prepared with the advice and assistance of counsel, who told the Board of Appeals he was fully aware of the circumstances surrounding the conveyance; yet the alleged trust was never memorialized in writing.

We have no reason to overturn the Board's finding of fact that plaintiff's conveyance of Lot 12 brought Lots 11 and 12 into the single ownership of Diane Dion. Plaintiff has fallen far short of proving that she retained equitable ownership so as to deprive her sister of "ownership" under the Lyman ordinance. "[T]he attempt to establish a trust in lands by implication of law is in defiance of the statute of frauds, subversive of paper title and must be proven by the most satisfactory and convincing evidence." *Anderson v. Gile,* 78 A. 370, 371, 107 Me. 325, 328 (1910). The Board of Appeals, the factfinder in this case, found her evidence neither satisfactory nor convincing. A finding that plaintiff failed to carry her burden of proof on the issue whether the conveyance was one in trust "may be reversed on appeal only if the evidence in support [of the alleged trust] was of such a nature that the factfinder was compelled to believe it and to draw therefrom the requested inference to the exclusion of any other." *Luce Co. v. Hoefler,* 464 A.2d 213, 215 (Me.1983).

In the face of the unqualified deed of record she gave her sister for Lot 12, plaintiff's burden was exceptionally heavy. Her statements before the Board, even if fully

---

signature in a blank labeled "Approved" on a second permit application. She now argues that she obtained a vested right to a building permit by the failure of any municipal official or other affected party to appeal that approval in a timely manner. We need not decide what the effect of a building permit issued by the Lyman code enforcement officer would have been because none was issued. Whoever the appropriate municipal licensing official was, it is the issuance of the permit, not the expression of an intent to grant a permit in the future, that is the final action subject to appeal on which a limitations period could run. *See Keating v. Zoning Bd. of Appeals,* 325 A.2d 521, 525 (Me. 1974).

accepted, by no means compelled the conclusion that she met the requisite quantum of proof. The nature of the conveyance was described to the Board of Appeals in various ways at different times. Those descriptions range from a detailed agreement among plaintiff, her sister, and their parents that clearly would have created an express trust but for the statute of frauds, 33 M.R.S.A. § 851 (1988), to an explanation that "recently [plaintiff] conveyed the property to her sister Diane because there was an expectation that the sister was going to do something with the property." Plaintiff told the Board that she conveyed the land because she "w[as] not up to the day to day required management of that particular parcel of land" at a time of marital upheaval, and that she reimbursed her sister each year for the real estate taxes. That is the most concrete evidence that might support a conclusion that the conveyance and reconveyance were anything other than what the deeds recorded in the registry showed them to be, and it is by no means sufficient to prove that Diane Dion never owned Lot 12.

## II.

■ Plaintiff further contends that Lots 11 and 12 are not merged, even if her sister did for several years own both of them simultaneously, because the lots were unquestionably in separate ownership on the effective date of the ordinance amendment fixing the 5–acre minimum lot size. We hold, however, that the Board of Appeals correctly construed the Town's zoning ordinance and correctly held that plaintiff's undersized building lot lost its grandfathered status as a separate parcel by reason of its later common ownership with a contiguous lot over a period lasting more than three and a half years. Under plaintiff's proposed alternative construction of the ordinance, the owner of a single conforming lot, if it is formed from undersized component parts that were at one time grandfathered, may redivide it thereafter by a conveyance severing unity of title. Under either construction, the zoning ordinance is not bound to the facts of this particular case: if the lot may be divided, the division may be accomplished by conveying to anyone at all.

The construction of a municipal ordinance is a question of law for the court, with the meaning to be decided in light of the objectives and general structure of the ordinance. *See Robertson v. Town of York,* 553 A.2d 1259, 1260 (Me.1989); *LaPointe v. City of Saco,* 419 A.2d 1013, 1015 (Me.1980). We approach this question of law having already established as fact that both transactions between the sisters were outright conveyances. To use the family relationship as a basis, consciously or subliminally, for treating the resulting lot merger as somehow incomplete would subvert the intent manifested by the parties in recording their deeds: that the conveyances should be given their full legal effect.

The provisions on which the Board of Appeals relied are found in subchapter 1.4, "Non–Conforming Uses," of the Lyman zoning ordinance. Section 1.4.5, entitled "Non–Conforming Lots of Record," provides in pertinent part:

> 1.4.5.1A   A single lot of record which, at the effective date of adoption or amendment of this Ordinance, does not meet the area or width requirements, or both, of the District in which it is located, may be built upon *provided* that such lot *shall be* in separate ownership and not contiguous with any other lot in the same ownership....

> 1.4.5.2   If two or more contiguous lots or parcels are in single ownership of record at the time of adoption or amendment of this Ordinance, and if all or part of the lots do not meet the dimensional requirements of this Ordinance, the lands involved shall be considered to be a single parcel for the purposes of this Ordinance. If the resulting single parcel of land still does not meet the dimensional requirements of the District in which the land is located, the land shall be treated as a single lot of record for the purpose of this Ordinance....

(Emphasis added)

When the area requirement governing plaintiff's lot was raised to 5 acres on March 10, 1979, *id.* § 3.5, plaintiff had been

the owner of record for over two weeks. The lot was thereby grandfathered and would have been exempt from the new dimensional requirement had plaintiff applied for her permit at that time. Lots 11 and 12 remained unimproved, however, and later that same year came into the single ownership of plaintiff's sister. After the conveyance to the sister those lots failed to satisfy the proviso of subsection 1.4.5.1A that they not be "contiguous with any other lot in the same ownership," and neither lot was then buildable.[4]

That much is unambiguous. The question of interpretation now before us arose when plaintiff's sister reconveyed Lot 12. Plaintiff contends that once the two lots reverted to separate ownership, the only applicable provision of the zoning ordinance was subsection 1.4.5.2, which defines how and when a parcel becomes a "nonconforming lot of record." Plaintiff's brief characterizes the Town's position as an attempt to read subsection 1.4.5.2 as if it expressly merges contiguous lots that "are in single ownership of record at the time of adoption or amendment of this Ordinance *or thereafter.*"

 The italicized language is not present and cannot reasonably be read into subsection 1.4.5.2. We agree with plaintiff that this subsection addresses only how grandfathered status is acquired and not how it is retained or lost. We agree with the Town, however, that the law that controls this case is not subsection 1.4.5.2 as read in a vacuum. The Town has properly maintained that the applicable law is section 1.4.5 read as a whole and construed so as to accomplish the objectives of the ordinance. We must look primarily at subsection 1.4.5.1A. That subsection makes clear that not every "lot of record" is a lot that "may be built upon"—it is also necessary that the lot "shall be" (namely, at a future time after the date of the amendment) noncontiguous to any other lot in the same ownership. The question is whether lot merger under subsection 1.4.5.1A, which occurs when two undersized lots come into single ownership and then become no long-

er separately buildable, is permanent and irreversible, like the merger under subsection 1.4.5.2 that occurs immediately upon adoption of the ordinance amendment. We believe the merger under either subsection is irreversible.

As the Board of Appeals and the Superior Court have already concluded, it would frustrate the objectives of the Lyman ordinance to permit Diane Dion, as the owner of a single conforming lot upon the merger of Lots 11 and 12, to redivide it into two undersized lots. "Nonconforming uses are a thorn in the side of proper zoning and should not be perpetuated any longer than necessary. The policy of zoning is to abolish nonconforming uses as swiftly as justice will permit." *Town of Windham v. Sprague,* 219 A.2d 548, 552–53 (Me.1966). This policy is expressed throughout subchapter 1.4 of the Lyman zoning ordinance, the subchapter dealing with nonconforming uses and containing the disputed section 1.4.5. Section 1.4.3 states a "rule of precedence" under which a nonconforming use may not be resumed once it has been "superseded by a permitted use of a structure, or structure and land in combination," and section 1.4.2 reads as follows:

> A non-conforming use which is discontinued for a period of two (2) years may not be resumed. The uses of the land, building or structure shall thereafter conform to the provisions of this Ordinance.

The Town's construction of its zoning ordinance, under which Lots 11 and 12 once merged lose their individual grandfathered status as nonconforming lots, is a reasonable interpretation of a provision that is designed to abate nonconformities as soon as it is fair to do so. Indeed, any other construction would ignore both the context and the purpose of the disputed language.

The entry is:

Judgment affirmed.

All concurring.

---

**4.** Indeed, the two lots were still in common ownership on the filing dates of plaintiff's two building permit applications.