MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2015 ME 13
Docket:        Sag-14-44
Argued:        November 5, 2014
Decided:       February 10, 2015

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, <u>JABAR</u>, and HJELM, JJ.[*]

JONATHAN R. DAY

v.

TOWN OF PHIPPSBURG et al.

JABAR, J.

[¶1]  Jonathan R. Day appeals from a judgment entered in the Superior Court (Sagadahoc County, *Horton, J.*) in favor of Carol Reece and the Town of Phippsburg (Town) on Day's request for declaratory relief.  Day contends that the court erred in determining that certain property owned by Reece qualifies as a grandfathered nonconforming lot within the meaning of the Phippsburg Shoreland Zoning Ordinance (PSZO).  He argues that the grandfathered status of a nonconforming lot that was created by the merger of two nonconforming lots, once lost by the unlawful division of that merged lot, cannot be restored by recombination of the illegally separated lots.  We agree with Day and vacate the judgment of the Superior Court.

---

[*]  Silver, J., sat at oral argument and participated in the initial conference but retired before this opinion was adopted.

## I. BACKGROUND

[¶2]  The dispute in this case concerns the status of two adjacent beachfront lots, labeled lots 113 and 114 on the Town of Phippsburg's Tax Map 14.  Each of these lots contains less than 20,000 square feet and both have been vacant since 1951.  In 1956, Joseph Spear acquired lot 114.  In 1987, he acquired lot 113.

[¶3]  In 1989, the PSZO required a beachfront lot to consist of at least 40,000 square feet in order to qualify for development.  Phippsburg, Me., Shoreland Zoning Ordinance §§ 3.2.1, 3.2.4(1)(a) (March 1989).  The then-effective ordinance contained a grandfather clause allowing limited development of a lot that failed to meet minimum lot-size requirements if the lot (1) was in existence at the effective date of adoption or amendment of the ordinance and (2) was not contiguous with another lot held in common ownership. *Id.* § 1.5.5(a).  The ordinance also contained a merger clause requiring the combination of lots that were adjacent and held in common ownership at the time of adoption or amendment of the ordinance if all or part of the lots failed to meet minimum lot-size requirements. *Id.* § 1.5.5(b).  As a result of this merger clause, lots 113 and 114 (which are contiguous with each other and were commonly owned by Spear) were merged into a single, nonconforming, grandfathered lot in 1989.

[¶4] The 1989 merger clause further prohibited any separation of a merged lot that would result in a dimension or area that did not meet minimum lot-size requirements. *Id.* In 1991, despite this prohibition, Spear separated the lots, conveying lot 113 to Carol Reece and lot 114 to Mary Kate Izzo.

[¶5] In 2009, the Town amended a section of the PSZO titled "Non-conforming Lots" and established for that section a retroactive effective date of January 1, 1989. Phippsburg, Me., Shoreland Zoning Ordinance § 12(E) (June 9, 2009). The PSZO's amended merger clause required the combination of lots that were contiguous and commonly owned as of January 1, 1989, if at least one of them was unimproved and at least one failed to meet the PSZO's lot-size requirements. *Id.* § 12(E)(3). The amendment permitted the continuance of a nonconforming condition (which was defined to include a nonconforming lot) subject to the requirements of section 12. *Id.* §§ 12(A), 18(B).

[¶6] In April 2012, Reece requested a "no action letter" from the Phippsburg Board of Selectmen (Board) regarding any zoning violations that may have occurred when Spear separated lots 113 and 114. In response, the Board issued Reece a Letter of No Enforcement stating that the Town would "not seek to enforce its ordinance with respect to the 1991 conveyances" and would "consider both lots to be lawful nonconforming lots."

4

[¶7]  Day owns property that abuts lot 113.  After the Board issued its no action letter to Reece, Day twice requested clarification that the letter did not constitute a determination that lot 113 was a developable nonconforming lot within the meaning of the PSZO.  The Board did not act on Day's requests.

[¶8]  In February 2013, Reece applied for a coastal sand dune permit to develop lot 113.  Two months later, Day filed a complaint against Reece and the Town, seeking a declaratory judgment that lot 113 is not a grandfathered nonconforming lot within the meaning of the PSZO.  He then moved for summary judgment.  In July 2013, Reece acquired lot 114 from Izzo.  She then requested summary judgment against Day.

[¶9]  In December 2013, the court granted Reece's motion for summary judgment, concluding that (1) lots 113 and 114 were not merged under Spear's ownership and thus retained individual grandfathered status following their 1991 separation;[1] and (2) even if lots 113 and 114 were merged in 1989, they enjoyed combined grandfathered status, which was lost by their 1991 separation, but restored when the lots returned to single ownership in 2013.  Following Day's motion to alter or amend the judgment pursuant to M.R. Civ. P. 59(e), the court

---

[1]  The 1989 amendment to the PSZO was not in evidence when the court rendered its initial decision. In its decision, the court analyzed the lots' status when they were commonly owned by Spear, pursuant to the PSZO as amended in 2009.  The court declined to interpret the 2009 amendment's retroactive effective date as effecting a retroactive merger that would render Spear's 1991 conveyances retroactively unlawful, reasoning that such an interpretation presented a "troublesome ex post facto law issue."

issued an amended decision withdrawing the conclusion that the lots did not merge under Spear's common ownership,[2] but reiterating the conclusion that Reece had restored the lots' grandfathered status by recombining them. From this judgment, Day timely appealed. *See* M.R. App. P. 2(b)(3).

## II. DISCUSSION

[¶10] We review the award of summary judgment de novo, considering the evidence in the light most favorable to the nonprevailing party. *Kurtz & Perry, P.A. v. Emerson*, 2010 ME 107, ¶ 15, 8 A.3d 677. If there are no genuine issues of material fact, we consider whether the prevailing party was entitled to judgment as a matter of law. *Doe I v. Williams*, 2013 ME 24, ¶ 10, 61 A.3d 718.

[¶11] The facts in this case are not in dispute, and the parties also agree that lots 113 and 114 were merged by ordinance in 1989, when they were commonly owned by Spear. The only issue is whether, as a matter of law, Reece's recombination of lots 113 and 114 effected a resurrection of the grandfathered status that the lots had when they were merged under Spear's ownership.[3]

---

[2] Day supported his motion to alter or amend by submitting a copy of the PSZO as amended in March 1989. The court admitted the amendment, noting that the parties had not raised the issue of the lots' merger when Spear owned them both and that Day was not obligated to file materials in the summary judgment record related to an uncontested issue. After considering the 1989 amendment, the court determined that lots 113 and 114 had merged when they were commonly owned by Spear.

[3] The lot created by the 1989 merger of lots 113 and 114 was a nonconforming lot of record entitled to grandfathered development status because it (1) was in existence as of January 1, 1989, (2) did not comply with the PSZO's dimensional requirements, and (3) was not contiguous with another commonly owned lot. *See* Phippsburg, Me., Shoreland Zoning Ordinance § 12(E)(1) (June 9, 2009).

6

Resolution of this issue turns on the relationship between the PSZO provisions that limit continued nonconformities and those that provide grandfathered status.

[¶12]  The meaning of the terms of a zoning ordinance is a matter that we consider de novo.  *D'Alessandro v. Town of Harpswell*, 2012 ME 89, ¶ 5, 48 A.3d 786.  "We examine an ordinance for its plain meaning and construe its terms reasonably in light of the purposes and objectives of the ordinance and its general structure.  If an ordinance is clear on its face we will look no further than its plain meaning."  *Id.* (quotation marks omitted).  When the terms of an ordinance are capable of multiple interpretations, they "must be construed reasonably with regard to both the objects sought to be obtained and to the general structure of the ordinance as a whole."  *Adams v. Town of Brunswick*, 2010 ME 7, ¶ 11, 987 A.2d 502 (quotation marks omitted).

[¶13]  The PSZO states that its intent is to promote land use conformities, but it provides for a limited exception allowing preexisting nonconformities to "continue" subject to the requirements of section 12.  Phippsburg, Me., Shoreland Zoning Ordinance § 12(A) (June 9, 2009).  Section 12(E)(1) of the Ordinance provides that a nonconforming lot of record may be built upon without the need for a variance if the lot is not contiguous with another lot held in common ownership.  *Id.* § 12(E)(1).

[¶14]  As applied to this case, there are two reasonable interpretations of the word "continue" found in section 12(A).  On one hand, the grandfathered status of the nonconforming lot created by merger in 1989 could be understood to "continue" to the present only if lots 113 and 114 remained merged at all times since 1989.  On the other hand, the grandfathered status of the nonconforming lot created by merger in 1989 could be understood to "continue" to the present if the lot that existed in 1989 is identical to a lot that exists today.[4]

[¶15]  To resolve this ambiguity, we consider relevant zoning objectives and the purposes served by the inclusion of grandfather clauses in zoning ordinances. "The policy of zoning is to abolish nonconformi[ties] as speedily as justice will permit." *Town of Windham v. Sprague*, 219 A.2d 548, 552-53 (Me. 1966).  In light of this policy, zoning provisions that restrict nonconformities are liberally construed, and zoning provisions that allow nonconformities are strictly construed. *Brackett v. Town of Rangeley*, 2003 ME 109, ¶ 16, 831 A.2d 422.  A grandfather clause, which allows the limited continuance of nonconformities, is included in zoning ordinances in order to avoid takings challenges.  *Stewart v. Town of Durham*, 451 A.2d 308, 311 & n.6 (Me. 1982).  It is designed to strike a balance between a municipality's interest in abolishing nonconformities and the interests of

---

[4]  The former interpretation, advocated by Day, permanently terminates grandfathered status when the lot to which it belongs ceases to exist.  The latter interpretation, advocated by Reece, terminates grandfathered status when the lot to which it belongs ceases to exist, but allows resurrection of that status upon re-creation of that lot.

property owners in maintaining land uses that were allowed when they purchased their property. *Id.* at 311.

[¶16]  In *Farley v. Town of Lyman*, we considered the effects of a merger, pursuant to a merger clause found in Lyman's zoning ordinance, of two adjacent, undersized, commonly owned lots into a single lot that complied with applicable lot-size requirements.  557 A.2d 197, 200-01 (Me. 1989).  We held that after their merger each lot lost its individual grandfathered status, and that that status could not be revived should the lots cease to be commonly owned.  *Id.* at 201.  This conclusion was supported by a section of the Lyman ordinance that provided that a nonconforming use could not be resumed once it had been replaced by a conforming use for a period of two years.  *Id.*  It also served zoning's general policy of abolishing nonconforming uses as quickly as justice would allow.  *Id.*

[¶17]  In this case, construing the PSZO to preclude a resurrection of the grandfathered status of the again-merged lot would be in harmony with the purpose of grandfathering.  *See Stewart*, 451 A.2d at 311 (explaining that grandfathering is designed to protect rights anticipated at the time property was purchased).  Lots 113 and 114 lost individual grandfathered status when merged by ordinance in 1989, *see Farley*, 557 A.2d at 201, and lost collective grandfathered status when unlawfully separated by deed in 1991, *see* Phippsburg, Me., Shoreland Zoning Ordinance § 1.5.5(b) (March, 1989) (prohibiting division of a merged lot); *id.*

§ 1.5.4 (requiring compliance with the PSZO as a condition to the grandfathered continuance of a nonconformity). When Reece acquired lots 113 and 114, each lot was nonconforming and not grandfathered, and thus neither could be developed without a variance. Because Reece did not have the right to develop the lots without a variance when she acquired them, construing the PSZO to deny her that right today does not divest her of anything.

[¶18] We conclude that the stricter interpretation of the PSZO advocated by Day promotes land use conformities better than the more relaxed interpretation advocated by Reece. In *Farley*, we interpreted the Lyman zoning ordinance to provide that a nonconforming lot irreversibly loses its individual grandfathered status when it is merged with another lot to create a conforming lot. 557 A.2d at 201. Here, we interpret the PSZO to provide that the grandfathered status of a merged nonconforming lot is permanently lost when that merged lot is unlawfully divided.[5]

The entry is:

> Judgment vacated. Remanded to the Superior Court for further proceedings consistent with this opinion.

---

[5] In light of our ruling in Day's favor, we deny Reece's request for sanctions against Day pursuant to M.R. App. P. 13(f).

**On the briefs:**

James D. Poliquin, Esq., Norman, Hanson, & DeTroy, LLC, Portland, for appellant Jonathan R. Day

Chris Neagle, Esq., Troubh Heisler, PA, Portland, for appellee Carol Reece

Jessica L. Maher, Esq., Moncure & Barnicle, Topsham, for appellee Town of Phippsburg

**At oral argument:**

James D. Poliquin, Esq., for appellant Jonathan R. Day

Chris Neagle, Esq., for appellee Carol Reece

Sagadahoc County Superior Court docket number CV-2013-22
FOR CLERK REFERENCE ONLY