MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:      2017 ME 114
Docket:        Kno-16-237
Argued:        February 8, 2017
Decided:       June 6, 2017

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, and HUMPHREY, JJ.

STEVEN WOLFRAM et al.

v.

TOWN OF NORTH HAVEN et al.

HUMPHREY, J.

[¶1]  Steven Wolfram and the Mullins Development Trust appeal from a judgment of the Superior Court (Knox County, *Billings, J.*) affirming a decision of the Town of North Haven Board of Appeals upholding a permit issued by the Town of North Haven Planning Board to Nebo Lodge, Inc., and Nebo Real Estate, LLC.  We affirm the judgment.

## I.  BACKGROUND

[¶2]   In October 2013, Nebo Lodge, Inc., and Nebo Real Estate, LLC, (collectively, Nebo Lodge) filed an application for a land use permit.  Nebo Lodge, which operates an inn and restaurant in North Haven, sought to tear down "the bungalow"—one of two existing structures on the property—and rebuild it as "the annex."  The other structure, "the lodge," houses the inn and

restaurant. The lodge was previously renovated and expanded in 2009 and 2010.

[¶3] In addition to increasing the size of the annex structure, Nebo Lodge proposed a change in use, including two bedrooms for staff; an office; storage for food, bikes, trash, and recycling; and a kitchen for processing, refrigerating, and freezing food. Nebo Lodge submitted a second application for a land use permit seeking authorization for "wrecking," described as a "partial tear down" that would leave a "small piece" of the previous bungalow structure intact.

[¶4] The Planning Board held three public hearings on October 30 and November 3 and 4, 2013. Steven Wolfram, who owns property across the street from the Nebo Lodge property, opposed the applications.[1] On November 13, 2013, the Planning Board approved the applications with conditions.

[¶5] Wolfram appealed to the North Haven Board of Appeals (BOA), and the BOA held hearings on March 12 and 17, 2014.[2] *See* North Haven, Me.,

---

[1] Although Wolfram was not physically present at the hearings before the Planning Board, his attorney appeared on his behalf, and Wolfram participated by telephone in addition to submitting a written position statement.

[2] Nebo Lodge demolished the bungalow structure and began reconstruction after receiving Planning Board approval but before the BOA hearing. The code enforcement officer testified that a corner of the old structure was retained to hold up the stairs in the rebuilt annex.

Land-Use Ordinance § 5.5 (Feb. 16, 2010). Four BOA members recused themselves due to conflicts of interest, and they were replaced by other individuals believed to have no conflicts. The BOA accepted evidence and made factual findings. The BOA affirmed the Planning Board decision in a written decision with findings of fact and conclusions of law.

[¶6] Wolfram appealed to the Superior Court, contending that the BOA erred in interpreting various provisions in North Haven's Ordinance and that the permit review process violated his due process rights.[3] *See* 30-A M.R.S. § 2691(4) (2016); M.R. Civ. P. 80B. The court affirmed the BOA's decision. Wolfram appealed. *See* M.R. Civ. P. 80B(n); M.R. App. P. 2.

## II. DISCUSSION

A.     Standard of Review

[¶7] "Our review of administrative decision-making is deferential and limited." *Beal v. Town of Stockton Springs*, 2017 ME 6, ¶ 13, 153 A.3d 768. "When a zoning board of appeals acts as the tribunal of original jurisdiction as both fact finder and decision maker,[4] we review its decision directly for

---

[3] Although Wolfram alleged that the decision was affected by bias, he did not move for a trial of facts regarding the alleged bias. *See* M.R. Civ. P. 80B(d), (i).

[4] Because the BOA accepted evidence and made factual findings, as authorized by the Ordinance and by statute, *see* North Haven, Me., Land-Use Ordinance § 5.5 (Feb. 16, 2010); 30-A M.R.S. § 2691(3)(D) (2016), we review its decision directly. *See Rossignol v. Me. Pub. Emps. Ret. Sys.*, 2016 ME 115, ¶ 6, 144 A.3d 1175; *Stewart v. Town of Sedgwick*, 2000 ME 157, ¶ 7 & n.2, 757 A.2d 773.

errors of law, abuse of discretion, or findings not supported by substantial evidence in the record." *Brackett v. Town of Rangeley*, 2003 ME 109, ¶ 15, 831 A.2d 422. Ordinances are construed de novo. *Merrill v. Town of Durham*, 2007 ME 50, ¶ 7, 918 A.2d 1203. As the party seeking to vacate the BOA's decision, Wolfram bears the burden of persuasion on appeal. *See Duffy v. Town of Berwick*, 2013 ME 105, ¶ 13, 82 A.3d 148.

B. Ground Area Restriction for Nonconforming Structures

[¶8] The size of the Nebo Lodge property is less than the 20,000-square-foot minimum lot size in the Village District, which rendered the bungalow and the lodge nonconforming. *See* North Haven, Me., Land-Use Ordinance §§ 2.2, 2.3, 2.5, 3.3(D). Wolfram first argues that the annex exceeds the allowable expansion of a nonconforming structure pursuant to the Ordinance.

[¶9] "In construing the language of an ordinance, the ordinance is to be considered as a whole." *Jade Realty Corp. v. Town of Eliot*, 2008 ME 80, ¶ 9, 946 A.2d 408. Undefined terms are given their common meaning "unless the context clearly indicates otherwise." *Id.* (quotation marks omitted). Because the intent of zoning is generally to abolish nonconforming structures and uses, "zoning provisions that restrict nonconformities are liberally construed, and

zoning provisions that allow nonconformities are strictly construed." *Day v. Town of Phippsburg*, 2015 ME 13, ¶ 15, 110 A.3d 645.

[¶10]  Section 2.5 provides that

> [a]ny structure in existence as of the effective date of this Ordinance, which becomes non-conforming solely from a failure to satisfy the area requirements of the district in which it is located, may be repaired, maintained, and improved.

North Haven, Me., Land-Use Ordinance § 2.5.  Nonconforming structures "may be enlarged . . . without a variance," so long as "the enlargement . . . contains no more than 33% of the ground area of the grandfathered structure."[5]  *Id.* § 2.5(B).  Here, the ground area of the annex is less than 33% larger than the ground area of the previous structure, the bungalow.  Wolfram interprets section 2.5, however, to limit the total expansion of *all* nonconforming structures on a lot to 33% of the ground area of a *single* nonconforming structure.  He thus interprets section 2.5 to require the Town to aggregate each expansion on the lot and to prohibit further expansion once that percentage, tied to a single nonconforming structure, has been reached.  Because Nebo Lodge expanded the lodge in 2009 and 2010, and further expansion to the separate annex would, in the aggregate, exceed 33% of the

---

[5]  "Grandfathered structure" is not defined.  As used in the zoning context, "grandfathered" typically refers to uses or structures that, after a legislative change, no longer comply with zoning, but are nonetheless allowed to continue.  *See, e.g.*, *Town of Levant v. Seymour*, 2004 ME 115, ¶¶ 20-22, 855 A.2d 1159.

6

original lodge's ground area, Wolfram contends that Nebo Lodge can expand no further and thus the annex violates section 2.5.

[¶11] Wolfram's interpretation is unsupported by the language of the Ordinance. Even strictly construed, the Ordinance clearly permits *any* nonconforming structure to be expanded by up to 33% of the ground area *of the previous structure*. Here, the annex expansion does not exceed 33% of the ground area of the structure that it replaced, the bungalow. Any expansions made to the lodge—a separate nonconforming structure—were irrelevant because section 2.5 does not prohibit the expansion of multiple nonconforming structures on a single lot. *See* North Haven, Me., Land-Use Ordinance § 2.5. Instead, the 33% ground area restriction applies to each individual nonconforming structure. *See id.* Because the property had two nonconforming structures—the annex and the lodge—each may be enlarged by up to 33% of the ground area of the structure that it replaced and comply with section 2.5. *See id.*

C.      Willfully Destroyed Structure

[¶12] Wolfram next contends that the annex expansion violated section 2.6 of the Ordinance, which provides that "[a]ny non-conforming use or

structure which is hereafter damaged or destroyed by fire of[6] cause other than the willful act of the owner of his agent,[7] may be restored or reconstructed to its original dimensions, and used as before." North Haven, Me., Land-Use Ordinance § 2.6. Wolfram interprets section 2.6 to prohibit restoration or replacement of a willfully demolished nonconforming structure and to limit any restoration or replacement to the size of the original structure.

[¶13] We conclude that section 2.6 does not apply to a willful demolition for renovation purposes undertaken with municipal approval. Instead, section 2.6 concerns the repair or replacement of a nonconforming structure if damaged or destroyed by a fire or cause other than the owner's willful act. *See id.* Wolfram's interpretation would effectively prohibit any voluntary alteration of a nonconforming structure because a renovation would necessarily require "damage" undertaken intentionally by "the owner [or] his agent." *Id.* More significantly, such an interpretation would conflict with section 2.5, which unlike section 2.6, directly addresses enlargements. Section 2.5 allows for expansion of *any* nonconforming structure, provided

---

6 The Town represented at oral argument that this provision is a typographical error and in fact is intended to state "fire *or* cause." This distinction is immaterial to our analysis.

7 This is also presumably intended to state "owner or his agent."

that the expansion does not exceed 33% of the ground area of the previous structure.  *See* North Haven, Me., Land-Use Ordinance § 2.5(B).  Because we must interpret section 2.6 in the context of the entire ordinance scheme in order "to achieve a harmonious result," *Wister v. Town of Mount Desert*, 2009 ME 66, ¶ 17, 974 A.2d 903, and section 2.5 expressly allows for and governs enlargements of nonconforming structures, section 2.6 does not apply to the annex.

D.     Twenty Percent Lot Coverage

[¶14]  Wolfram next asserts that the annex violates a 20% lot coverage restriction applicable to guest houses.  Section 4.1, titled "Guest House," provides:

> A.     Only one guest house per lot
> B.     Will not exceed footprint of the principal structure
> C.     In no case shall all structures, including the guest house, cover more than 20% of a lot.
> D.     All other provisions of this Ordinance must be met before building a guest house.

North Haven, Me., Land-Use Ordinance § 4.1.  "Guest house" is listed among the permitted structures as an accessory use to a "single-family dwelling use." *Id.* § 1.6.  "Guest house" is not defined; the Ordinance provides that "[t]erms not defined will have customary dictionary meaning." *Id.* § 1.5.  Webster's Dictionary defines "guesthouse" as "a small house on the same property as a

larger main house, used for guests" or "a free-standing hotel unit, often like a cottage rented to guests." Webster's New World College Dictionary 631 (4th ed. 2002).

[¶15] "Although interpretation of an ordinance is a question of law, we accord substantial deference to the Planning Board's characterizations and fact-findings as to what meets ordinance standards." *Bizier v. Town of Turner*, 2011 ME 116, ¶ 8, 32 A.3d 1048 (quotation marks omitted). "Undefined . . . terms . . . contained in an ordinance must be construed reasonably with regard to both the objects sought to be obtained and to the general structure of the ordinance as a whole." *Davis v. SBA Towers II, LLC*, 2009 ME 82, ¶ 15, 979 A.2d 86 (quotation marks omitted).

[¶16] The BOA found that the proposed annex was not a guest house because the bedrooms would be used by Nebo Lodge employees, not paying guests, and further that the annex was not a single-family dwelling use because the kitchen was not internally accessible from the bedrooms. The BOA therefore determined that section 4.1 did not apply. This conclusion is supported by factual findings based on record evidence, and we discern no error of law. Neither the evidence nor the Ordinance compelled the BOA to find and conclude that the annex is a "guest house," and we accord deference

10

to the BOA's ultimate characterization.[8]  *See Jordan v. City of Ellsworth*, 2003 ME 82, ¶ 8, 828 A.2d 768.

E.    Conditional Use Standards

[¶17]  Wolfram next argues that the BOA failed to follow section 6.5(A) of the Ordinance, which sets forth standards governing the issuance of a conditional use permit.  An applicant must demonstrate that

A.  neither the proposed use nor the proposed site upon which the use will be located are of such a character that the use will have an adverse impact upon the value or quiet possession of surrounding properties greater then [*sic*] would normally occur from the permitted sue [*sic*] in the zoning district;

B.  the proposed use will be compatible with the permitted uses . . . within the district in which it is located . . . .

North Haven, Me., Land-Use Ordinance § 6.5(A)-(B).

[¶18]  The BOA compared the annex use to permitted uses in the district and concluded that the use "would not have an adverse impact on the value[9] or quiet possession of surrounding properties 'greater than would normally occur from the permitted use in the zoning district.'"  The BOA found, based

---

8  We further find no merit to Wolfram's argument that the lodge is a "guest house" and therefore section 4.1 applies to the Nebo Lodge property.  The lodge use fits squarely within the definition of a "lodging facility," *see* North Haven, Me., Land-Use Ordinance § 1.6 (defining "lodging facility" as "A building in which rooms are offered for overnight accommodations, with or without meals, for compensation.").

9   The BOA noted that there was no evidence submitted as to the impact of the use on surrounding property values.

on competent record evidence, that not only would there be no adverse impact, but in fact the change in use would ameliorate noise and visual impacts because the annex would be used to store recycling, trash, and bicycles inside. The expansion would also reduce car traffic because employees would sleep on site. Contrary to Wolfram's contention, the BOA was not required to consider the Nebo Lodge property use as a whole because the evidence did not compel a finding that there was a "substantial increase or expansion in the volume or intensity of" the inn and restaurant use. North Haven, Me., Land-Use Ordinance § 6.3.

[¶19] The BOA did not err in applying the Ordinance, and its finding that the annex use would not have an adverse impact on the quiet possession of surrounding properties is supported by substantial evidence. *See Passadumkeag Mountain Friends v. Bd. of Envtl. Prot.*, 2014 ME 116, ¶¶ 12-14, 102 A.3d 1181.

F.    Due Process

[¶20] Finally, Wolfram argues that his due process rights were violated by bias and ex parte communications. "An administrative process may be infirm if it creates an intolerable risk of bias or unfair advantage." *Zegel v. Bd. of Soc. Worker Licensure*, 2004 ME 31, ¶ 16, 843 A.2d 18. Ex parte

communications implicate the due process rights of the excluded party and will be grounds to vacate a "decision if, as a result of [the] communications, the decision results in 'procedural unfairness,'" which calls into question the integrity and fairness of the decision. *Duffy*, 2013 ME 105, ¶ 18, 82 A.3d 148. Procedural errors are harmless and will not be grounds to vacate a decision unless they are inconsistent with substantial justice and result in prejudice. *See Zegel*, 2004 ME 31, ¶ 17, 843 A.2d 18. Whether the effect of bias and procedural unfairness denies a party due process is a question of law reviewed de novo. *See State v. Jones*, 2012 ME 126, ¶ 35, 55 A.3d 432.

[¶21] Wolfram identifies emails in the administrative record, mostly between Nebo Lodge representatives and members of the Planning Board, as the primary evidence supporting his contention that his due process rights were violated. None of those communications, however, implicates the BOA's impartiality. Many emails are correspondence between Nebo Lodge and Town officials directed at complying with the permit process, the Ordinance, and other applicable standards prior to the Planning Board hearing. Assuming the emails were improper ex parte communications, this would not be a basis to vacate the BOA's decision, the operative decision under review, because Wolfram has failed to point to any evidence that the communications

in fact affected that decision. *See Fitanides v. City of Saco*, 2015 ME 32, ¶ 22, 113 A.3d 1088 (stating that a biased statement by a municipal officer who is not a member of the municipal decision-making board, without more, is insufficient to impute bias to the board). Wolfram's contention that the procedural unfairness was endemic to the entire process before the Town is unsupported and unpersuasive.[10] Because there is a dearth of evidence in the record that the BOA decision was the product of bias or procedural unfairness, we conclude that the decision did not violate Wolfram's due process rights.

The entry is:

Judgment affirmed.

---

Matthew D. Manahan, Esq., and Catherine R. Connors, Esq. (orally), Pierce Atwood LLP, Portland, for appellants Steven Wolfram and the Mullins Development Trust

Paul L. Gibbons, Esq. (orally), Camden, for appellee Town of North Haven

Thomas B. Federle, Esq. (orally), Federle Law, LLC, Portland, for appellees Nebo Lodge, Inc., and Nebo Real Estate, LLC

Knox Superior Court docket number AP-2014-45
FOR CLERK REFERENCE ONLY

---

[10] There was no competent evidence in the record that statements attributed to the BOA chair by Wolfram were in fact made. We note that although four members of the BOA recused themselves because of conflicts, Wolfram did not move at the hearing for the chair to recuse.