MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2019 ME 160
Docket:       Ken 19-94
Argued:       October 9, 2019
Decided:      December 5, 2019

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

SHAWN A. GRANT

v.

TOWN OF BELGRADE

MEAD, J.

[¶1]   Shawn A. Grant appeals from a judgment of the Superior Court (Kennebec County, *Stokes, J.*) pursuant to M.R. Civ. P. 80B, affirming a decision of the Town of Belgrade Zoning Board of Appeals (BOA), which denied Grant's application for commercial use of his property at 24 Hulin Road.  Because the court did not err in affirming the BOA's decision, we affirm the judgment.

## I.  BACKGROUND

[¶2]   The following facts are drawn from the BOA's findings, which are supported by the record.  *See* M.R. Civ. P. 80B(f).  Grant's property comprises two addresses spanning three lots in Belgrade.  Grant resides at 21 Hulin Road (Map 26, Lot 58).  The land at issue in this appeal is located across the street from 21 Hulin Road at 24 Hulin Road (Map 26, Lots 33 and 34).  Combined,

2

lots 33 and 34 cover approximately 25,000 square feet in area and have 200 feet of shore frontage on Great Pond. The 24 Hulin Road property is located in the Limited Commercial District within Belgrade's Shoreland Zone. The 24 Hulin Road property has long supported a residence, which Grant rents to a tenant.

[¶3] In 2008, the Town's Planning Board approved Grant's application for a home occupation permit to conduct "[b]oat cleaning, painting and varnishing" for his new business, "Brightside Boat Services," at 21 Hulin Road. Over the next decade, Grant expanded his business beyond boat restoration. He installed docks extending from his property at 24 Hulin Road into Great Pond and rented out boat slips, kayaks, and paddle boards. Customers use the 24 Hulin Road property to park, access the docks, and launch small watercraft.

[¶4] In 2018, Grant submitted applications to the Planning Board for a seasonal dock and boat rental business at the 24 Hulin Road property under the Commercial Development Review Ordinance (CDRO) and the Shoreland Zoning Ordinance (SZO).[1] Belgrade, Me., Commercial Development Review Ordinance § 5 (Mar. 17, 2017); Belgrade, Me., Shoreland Zoning Ordinance § 16 (June 7, 2011). The Planning Board denied both applications, concluding that

---

[1] By the time Grant submitted his 2018 applications, he had been renting slips in the docks extending from the 24 Hulin Road property for approximately ten years.

the property failed to meet the minimum lot standards provided in Section 15(A) of the SZO. *See* Belgrade, Me., Shoreland Zoning Ordinance § 15(A).

[¶5] Grant filed an appeal with the BOA on May 3, 2018, arguing that the Planning Board misinterpreted the SZO. The BOA conducted a de novo hearing, considering all potentially applicable Town Ordinances—the SZO, CDRO, and Minimum Lot Size Ordinance (MLSO). Belgrade, Me., Shoreland Zoning Ordinance; Belgrade, Me., Commercial Development Review Ordinance; Belgrade, Me., Minimum Lot Size Ordinance (Mar. 19, 2010). During the hearing, Grant offered to discontinue residential use of 24 Hulin Road so that the property would have a single principal use (commercial) rather than two principal uses (commercial and residential). However, the BOA determined that even if the sole principal use was commercial, the property failed to meet the square footage and shore frontage requirements found in the SZO and MLSO. Belgrade, Me., Shoreland Zoning Ordinance § 15(A)(1)(b); Belgrade, Me., Minimum Lot Size Ordinance § 5(D)(1)(a).

[¶6] The BOA's key conclusions were as follows: Grant's use of 24 Hulin Road for Brightside's activities constitutes a commercial use; Section 11 of the SZO prevents a change in use from residential to commercial that is not

4

grandfathered under the SZO; Section 12(E) of the SZO, which allows for nonconforming lots, does not allow changes in use on a nonconforming lot when minimum lot standards are not met; and the MLSO prevents a change in use that renders a nonconforming lot less conforming. As to the CDRO permit, the BOA's sole basis for denial was that the 24 Hulin Road property failed to conform to the requirements of other Ordinances, namely the SZO and MLSO.

[¶7] Grant appealed the BOA's decision to the Superior Court pursuant to M.R. Civ. P. 80B. In a judgment entered on February 22, 2019, the court affirmed the BOA's decision. Grant now appeals to us. He argues that (1) the BOA erred when it determined that his waterfront activities constituted a new commercial use requiring permits and that (2) the BOA misinterpreted the SZO when it concluded that 24 Hulin Road, comprising legally nonconforming lots, was subject to the SZO's dimensional requirements.

## II. DISCUSSION

[¶8] When the Superior Court acts as an intermediate appellate court, we review directly the operative decision of the municipality for "abuse of discretion, errors of law, or findings not supported by the substantial evidence in the record." *Gensheimer v. Town of Phippsburg*, 2005 ME 22, ¶¶ 7, 16, 868 A.2d 161 (quotation marks omitted).

> [W]hether the operative decision of the municipality is the Planning Board decision or the decision of the Board of Appeals depends on the type of review that the Board of Appeals is authorized to undertake and what kind of review that Board actually performs: If the Board of Appeals acted as a tribunal of original jurisdiction, that is, as factfinder and decision maker, we review its decision directly. If, however, the Board acted only in an appellate capacity, we review directly the decision of the Planning Board . . . .

*Id.* ¶ 7 (quotation marks omitted). Belgrade's SZO authorizes the BOA to "hear and decide administrative appeals on a de novo basis," Belgrade, Me., Shoreland Zoning Ordinance § 16(G)(1)(a), and the BOA conducted a de novo hearing. Thus, as the parties agree, the BOA's decision is the operative one for review.

A.      Grant's 2008 Home Occupation Permit

[¶9]  Grant argues that his 2008 home occupation permit allows his use at 24 Hulin Road. Because the meaning of commercial use is unambiguous as utilized in the ordinance, the BOA's characterization of his use at 24 Hulin as a commercial use is a finding of fact. *See Goldman v. Town of Lovell*, 592 A.2d 165, 168 (Me. 1991). Because the appellant had the burden of proof before the BOA, we will set aside the BOA's finding of fact only if the record compels a contrary finding. *See Anderson v. Me. Pub. Emps. Ret. Sys.*, 2009 ME 134, ¶ 3, 985 A.2d 501.

6

[¶10]  Grant argues specifically that his use of 24 Hulin Road is not a new commercial use because his 2008 home occupation permit applied to both 21 and 24 Hulin Road.  It did not.  Grant's theory rests on the fact that he wrote "1.6 Acres" under "Total lot area" on the home occupation permit application, which is the total area of his three lots combined.  The permit application, however, specifically identified only "Hulin Rd. (21)" under "Specific location of property," and Grant left blank the space after "Name of Lake/Pond/Stream (if applicable)."  The scope of the permit was thus limited to the property at 21 Hulin Road.

[¶11]  Additionally, the home occupation permit clearly does not allow Grant's current and proposed *uses* at 24 Hulin Road.  The 2008 home occupation permit for "Brightside Boat Services" lists under business type simply "Boat cleaning, painting and varnishing."  The BOA did not err when it concluded that Grant's 2008 home occupation permit did not extend to include his present activities at 24 Hulin Road, and the record does not compel a contrary result.

B.    The Town's Authority to Regulate Docks

[¶12]  Further, Grant contends that the Town lacks the authority to regulate docks.  Grant is correct that, when the Town drew from the State

Guidelines for Municipal Shoreland Zoning Ordinances in drafting its SZO, it opted to omit the model section regulating docks. *Compare* 06-096 C.M.R. ch. 1000, §§ 14, 15(C), 17 (effective Jan. 26, 2015), *with* Belgrade, Me., Shoreland Zoning Ordinance §§ 14, 15, 17. But the Town's decision to omit the dock provisions does not equate to an intent to de-regulate commercial use related to docks. To the contrary, the SZO maintained the definition for "marina": "a business establishment having frontage on navigable water and, as its principal use, providing for hire offshore moorings or docking facilities for boats, and which may also provide accessory services." Belgrade, Me., Shoreland Zoning Ordinance § 17.

[¶13] Although the BOA did not make a finding categorizing Grant's activity as a marina, such a finding was not necessary for the BOA to reasonably determine that Grant's activity should be regulated as a commercial use. Even without considering the commercial activity on the docks themselves, Grant admits that his use of 24 Hulin Road includes at least "foot traffic and the loading and unloading [of] boats and gear." In addition, customers rent paddle boards and kayaks from 21 Hulin Road and travel to 24 Hulin Road to launch them. The BOA's determination that it had the authority to classify Grant's use

of 24 Hulin Road as commercial was reasonable, and the record does not compel a contrary conclusion. *See Anderson*, 2009 ME 134, ¶ 3, 985 A.2d 501.

C.     Ordinance Interpretation

[¶14]  We review a municipal board's interpretation of a local ordinance de novo as a question of law. *Dunlop v. Town of Westport Island,* 2012 ME 22, ¶ 15, 37 A.3d 300.  Because zoning ordinances, like statutes, derogate from common law, they are "strictly construed."  *Forest City, Inc. v. Payson*, 239 A.2d 167, 169 (Me. 1968).  "We examine an ordinance for its plain meaning and construe its terms reasonably in light of the purposes and objectives of the ordinance and its general structure.  If an ordinance is clear on its face we will look no further than its plain meaning." *Town of Minot v. Starbird*, 2012 ME 25, ¶ 14, 39 A.3d 897 (citations omitted) (quotation marks omitted).

[¶15]  Grant's core argument is that section 12(E)(1) of Belgrade's SZO, which pertains to nonconforming lots, exempts 24 Hulin Road from lot area and shore frontage requirements found elsewhere in the SZO.  We agree with the BOA's interpretation that section 12(E)(1) must be read in light of other provisions in the Ordinances, and we conclude that the BOA did not err in determining that Grant's change of use from residential to commercial would render the lots less conforming.

[¶16]   Section 12(E)(1) of the SZO, which excepts nonconforming lots from area, shore frontage, and lot width requirements, provides:

> A non-conforming lot of record as of May 4, 1976,[2] may be built on without the need for a variance provided that such lot is in separate ownership and not contiguous with any other lot in the same ownership, that the State Minimum Lot Size Law and Subsurface Waste Disposal Rules are complied with, and that all provisions of this Ordinance except lot area, shorefrontage, and minimum lot width can be met.   Variances relating to setback or other requirements not involving lot size or frontage shall be obtained by action of the Board of Appeals.

Belgrade, Me., Shoreland Zoning Ordinance § 12(E)(1).  Section 11 of the SZO, which broadly prevents alterations that are out of conformity with Ordinance regulations, reads:

> Except as hereinafter specified, no building, structure or land shall hereafter be used, *changed in use*, or occupied, and no building or structure or part thereof shall hereafter be erected, constructed, expanded, relocated, replaced, reconstructed, or altered except in conformity with all of the regulations herein specified for the district in which it is located, unless a variance shall have been granted.

*Id.* § 11 (emphasis added).  Section 12(A) of the SZO outlines nonconforming conditions and reads:

> It is the intent of this Ordinance to promote land use conformities, except that non-conforming conditions that existed before the effective date of this Ordinance, or amendments thereto, shall be allowed to continue, subject to the requirements set forth in this

---

[2]  The parties do not dispute that Grant's lots were legally nonconforming lots of record as of May 4, 1976.

section. Except as otherwise provided in this ordinance a *non-conforming condition shall not be permitted to become more non-conforming*.

*Id.* § 12(A) (emphasis added). Finally, Section 4 of the MLSO broadly governs nonconforming lots. Section 4(A) of the MLSO states:

A. Transfer of Ownership: Non-conforming lots may be transferred, and the new owner may continue the existing use of the non-conforming lot, subject to the provisions of this Ordinance. *The use of a non-conforming lot existing on the effective date [of] this Ordinance may not be changed to any other use for which the lot would be less conforming under the provisions of this Ordinance.*

Belgrade, Me., Minimum Lot Size Ordinance § 4(A) (emphasis added).

[¶17] On a preliminary note, we address the parties' dispute concerning whether the MLSO applies in addition to the SZO. We conclude that the two Ordinances apply concurrently. The MLSO states that "concurrent applicability or conflict notwithstanding, land use within the Shoreland Zone of the Town of Belgrade shall be permitted only in accordance with the land use standards of the Shoreland Ordinance of the Town of Belgrade." *Id.* § 3(B). Contrary to Grant's argument, this provision acknowledges the concurrent applicability of the SZO and MLSO. In the event that the two Ordinances conflict, the SZO controls. But where, as here, the Ordinances' provisions largely mirror one another, both Ordinances apply.

[¶18] Grant's lots at 24 Hulin Road are in the Limited Commercial District and currently support a residence. Their nonconformities arise from their area and shore frontage shortfalls. Specifically, the SZO and MLSO require a lot with residential uses to be at least 40,000 square feet, and the SZO mandates at least 200 feet of shore frontage. Belgrade, Me., Shoreland Zoning Ordinance § 15(A)(1)(a); Belgrade, Me., Minimum Lot Size Ordinance § 5(B)(1)(a). The SZO and the MLSO require a lot put to commercial use to be at least 60,000 square feet in area, and the SZO adds a minimum shore frontage requirement of 300 feet. Belgrade, Me., Shoreland Zoning Ordinance § 15(A)(1)(b); Belgrade, Me., Minimum Lot Size Ordinance § 5(D)(1)(a). Thus, as to their residential use, Grant's nonconforming lots at 24 Hulin Road fall short of the Ordinances' minimum area requirement by 15,000 square feet, while meeting the minimum shore frontage requirement of 200 feet. In contrast, if used commercially as Grant proposes, the lots would fail the minimum area requirement by 35,000 square feet and the minimum shore frontage requirement by 100 feet.

[¶19] The BOA reasonably concluded that the greater lot area and frontage standards required of a commercial use relative to a residential use rendered the lots less conforming when put to a commercial use. Although not

12

specifically cited by the BOA, the SZO expressly supports the BOA's determination in stating that "a non-conforming condition shall not be permitted to become more non-conforming." Belgrade, Me., Shoreland Zoning Ordinance § 12(A). Section 4 of the MLSO, entitled "Non-Conforming Lots," similarly provides, "The use of a non-conforming lot . . . may not be changed to any other *use* for which the *lot* would be less conforming under the provisions of this Ordinance." Belgrade, Me., Minimum Lot Size Ordinance § 4(A) (emphasis added).[3]

[¶20] Grant contends that section 12(E)(1) exempts his nonconforming lots from any area and shore frontage requirements for uses allowed in the Limited Commercial District. He emphasizes the following language of SZO sections 11 and 12(A) to support this theory: "Except as hereinafter specified" (section 11) and "Except as otherwise provided in this ordinance" (section 12(A)), arguing that this language demonstrates that sections 11 and 12(A) are

---

[3] We recognize that the heading and first sentence of MLSO section 4(A) might at first indicate that the entirety of section 4(A) is applicable only to the transfer context. *See* Belgrade, Me., Minimum Lot Size Ordinance § 4(A) (Mar. 19, 2010). However, in interpreting an ordinance, we construe its language as a whole. *Wister v. Town of Mount Desert*, 2009 ME 66, ¶ 17, 974 A.2d 903. Further, we endeavor not to "rely on the titles of statutory enactments in plumbing their meaning . . . at the expense of the text itself." *United States v. Ozuna-Cabrera*, 663 F.3d 496, 499 n.3 (1st Cir. 2011) (quotation marks omitted). *Accord* 1 M.R.S. § 71(10) (2018). Here, the second sentence of MLSO § 4(A), which the BOA cited in its conclusions, is a broad statement of principle that is not constrained by the subsection heading. The close mirroring between the language of SZO sections 11 and 12(A) and MLSO section 4(A) further supports this conclusion. *See* Belgrade, Me., Shoreland Zoning Ordinance §§ 11, 12(A) (June 7, 2011); Belgrade, Me., Minimum Lot Size Ordinance § 4(A).

not applicable because section 12(E)(1) operates as an exception to them. Belgrade, Me., Shoreland Zoning Ordinance §§ 11, 12(A). This argument is problematic for at least three reasons.

[¶21] First, the minimum lot area and shore frontage requirements provided in SZO section 15 vary based on the *use* of the lot. *Id.* § 15(A). Grant's lots became nonconforming when the SZO was enacted because they failed the minimum lot standards for residential use. In this context, it is impossible to completely decouple lot dimensions from uses. The Board's reasoning that the greater specifications required of commercial uses made Grant's lots more nonconforming is logical. Second, section 4(A) of the MLSO, which mirrors sections 11 and 12(A) of the SZO in preventing nonconformities from becoming more nonconforming, contains no similar qualifying language, such as "except as otherwise provided." *Compare* Belgrade, Me., Minimum Lot Size Ordinance § 4(A), *with* Belgrade, Me., Shoreland Zoning Ordinance §§ 11, 12(A).

[¶22] Finally, Grant's interpretation of section 12(E)(1) of the SZO would permit unlimited construction on legally nonconforming lots such as his own. The language of section 12(E)(1) allows nonconforming lots to be "built on" so long as all requirements apart from dimensional "lot area, shorefrontage, and minimum lot width can be met." Belgrade, Me., Shoreland Zoning Ordinance

14

§ 12(E)(1).  Grant argues that the Town's interpretation of the language "built on" fails to capture its ordinary meaning.  The Town advocates for a narrower construction of "built on."

[¶23]  A logical reading of "built on" does not, as Grant claims, "limit section 12(E)(1) to uses that have already occurred."  Instead, section 12(E)(1) permits construction as provided by its own language that also does not exceed the limits of the other relevant provisions in the Town's Ordinances—SZO sections 11, 12(A) and MLSO section 4(A).  Importantly, these other sections of the Ordinances do not bar all changes in use on nonconforming lots; they only prevent changes in use on nonconforming lots that increase the nonconformity of the lots.  For instance, if Grant's situation were the reverse—if he had a preexisting commercial use on nonconforming lots and applied to change his use to residential—the change in use would not exacerbate the lots' nonconformity.  Although the lots would still fail to conform if used residentially, section 12(E)(1) would allow the change because the change in use would make the lots less, rather than more, nonconforming and thus would comply with the other Ordinance sections.

[¶24]    To the extent that any lingering ambiguity surrounds these ordinance sections, we consider relevant zoning principles and objectives.  *See Day v. Town of Phippsburg*, 2015 ME 13, ¶ 15, 110 A.3d 645.

> Because the intent of zoning is generally to abolish nonconforming structures and uses, zoning provisions that restrict nonconformities are liberally construed, and zoning provisions that allow nonconformities are strictly construed.

*Wolfram v. Town of N. Haven*, 2017 ME 114, ¶ 9, 163 A.3d 835 (quotation marks omitted); *accord Day*, 2015 ME 13, ¶ 15, 110 A.3d 645.  Therefore, we may construe SZO section 12(E)(1) strictly and read SZO sections 11 and 12(A) and MLSO section 4(A) liberally to bar a change in use that makes a nonconforming lot more nonconforming.  This canon of construction is grounded in the purpose of grandfathering clauses, which is to avoid constitutional takings challenges.  *Day*, 2015 ME 13, ¶ 15, 110 A.3d 645.  Grandfathering clauses are "designed to strike a balance between a municipality's interest in abolishing nonconformities and the interests of property owners in maintaining land uses that were allowed when they purchased their property."  *Id.*  In sum, grandfathering clauses such as those in the Town's Ordinances allow landowners to continue the reasonable investment-backed expectations they had when they bought their properties, but they do not to permit expansions or changes to nonconforming conditions indefinitely.

The entry is:

Judgment affirmed.

---

Edmond J. Bearor, Esq. (orally), Jonathan P. Hunter, Esq., and Stephen W. Wagner, Esq., Rudman Winchell, Bangor, for appellant Shawn A. Grant

Michael A. Hodgins, Esq. (orally), Eaton Peabody, Bangor, for appellee Town of Belgrade

Kennebec County Superior Court docket number AP-2018-64
FOR CLERK REFERENCE ONLY