Andrew NYCZEPIR, et al.

v.

TOWN OF NAPLES, et al.

Supreme Judicial Court of Maine.

Submitted on Briefs Jan. 31, 1991.

Decided Feb. 26, 1991.

Matthew B. Nichols, Portland, for plaintiffs.

Robert S. Hark, Lewiston, for defendants.

Before ROBERTS, WATHEN, GLASSMAN, CLIFFORD, COLLINS and BRODY, JJ.

WATHEN, Justice.

Plaintiffs, Andrew and Lillian Nyczepir, appeal a judgment of the Superior Court (Cumberland County, *Perkins, J.*) upholding the decision of the Town of Naples Board of Appeals which denied their appeal of the Code Enforcement Officer's ("CEO") refusal to issue them a building permit. Plaintiffs argue on appeal that the Superior Court erred in accepting the Board's interpretation of section 8(C) of the Naples Shoreland Zoning Ordinance. We disagree and affirm the judgment of the Superior Court.

Plaintiffs own three contiguous lots of land on Trickey Pond in the Town of Naples. All three lots were purchased prior to the enactment of the Shoreland Zoning Ordinance in 1974. The most southerly lot, the "Lehman lot," is the subject of this appeal. The Lehman lot covers an area of approximately 23,000 square feet and was a conforming lot under the 1974 ordinance which required a minimum lot size of 20,-000 square feet. When the ordinance was amended in 1986, however, and lots were required to be at least 40,000 square feet, the Lehman lot was no longer conforming. In preparing to sell the Lehman lot, plaintiffs applied for a building permit in 1989. When the CEO refused to issue the permit because the lot failed to meet the minimum lot-size requirements, plaintiffs sought administrative review from the town's Board of Appeals.

The Board denied the appeal. It found the lot is nonconforming and ruled that it is not grandfathered, pursuant to section 8(C),[1] because it is contiguous with two other parcels having the same ownership. Deciding that the reference to nonconforming "use" in section 8(C) was a scrivener's error, the Board concluded that the section "clearly pertains to nonconforming lots of record and not nonconforming uses." Plaintiffs appealed and the Superior Court affirmed the Board's decision.

The town modeled its Shoreland Zoning Ordinance, on the *State of Maine Guidelines for Municipal Shoreland Zoning Ordinances ("Guidelines").*[2] Section 8(C) of the *Guidelines* states: "Any nonconforming *lot* of record existing before the effective date of this Ordinance and not adjoined by other land of the same ownership may be used in accordance with State laws and Section 10 of this Ordinance." (emphasis added). The Naples ordinance, as it was adopted in 1974, reads identically.

When the ordinance was revised in 1986, the word "lot" was changed to "use." Defendants contend that this was an inadvertent scrivener's error. Plaintiffs, however, argue that the word "use" is unambiguous and should be taken at face value. Citing *Weeks v. Smith,* 81 Me. 538, 18 A. 325 (1889), they assert that it should not be necessary to "engage in endless research ... to ascertain whether or not a valid, attested, official copy of an Ordinance correctly sets forth the laws of the Town." In *Weeks,* we stated:

> [P]ublic policy requires that the enrolled statutes of our state, fair upon their faces, should not be put in question after the public have given faith to their validity. No man should be required to hunt through the journals of a legislature to determine whether a statute, properly certified ... is a statute or not.

*Id.* at 547, 18 A. at 327.

"The meaning of terms or expressions in a zoning ordinance is a question of law for the court." *George D. Ballard, Builder, Inc. v. City of Westbrook,* 502 A.2d 476, 480 (Me.1985). In construing a zoning ordinance, a court must apply the following principles:

---

1. "Section 8. NON–CONFORMING USES

   .  .  .  .  .

   C. Any non-conforming use of record existing before the effective date of this Ordinance and not adjoined by other land of the same ownership may be used in accordance with State law and Section 10 of this Ordinance."

2. The *Guidelines* were adopted on December 15, 1973 by the Board of Environmental Protection and the Land Use Regulation Commission, and amended in 1979 and 1988.

The terms or expressions [should be] construed reasonably with regard to both the objects sought to be obtained and to the general structure of the ordinance as a whole. Undefined terms should be given their common and generally accepted meaning unless the context clearly indicates otherwise.

*Id.* (citations omitted). The Superior Court found the word "use" in section 8(C) to be "ambiguous and uncertain" for the following reasons:

First, if the word means *use* rather than *lot*, § 8(C) would simply duplicate § 8(B); second, the term "of record" following the word *use* is generally employed after the word *lot* in zoning ordinances; and third, the phrase "and not adjoined by other land of the same ownership" implies that the word *land* or *lot*, not *use*, is the proper antecedent.

In interpreting the ordinance, the Superior Court sought to construe it "reasonably with regard to both the objects sought to be obtained and to the general structure of the Ordinance as a whole." *Id.* The object of section 8 is to regulate any nonconformities existing on the effective date of the ordinance or any subsequent revisions. Paragraph B regulates pre-existing lawful nonconforming *uses;* thus, paragraph C must regulate pre-existing lawful nonconforming *lots* if it is not to duplicate paragraph B. Because paragraph B grandfathers pre-existing nonconforming *uses*, and the ordinance contains no other provision for grandfathering pre-existing lawful nonconforming *lots*, it is reasonable to conclude that paragraph C was intended to grandfather pre-existing lawful nonconforming lots rather than uses. Furthermore, the 1986 revision, which highlights all amended sections, indicates that section 8(B) was revised, but does not recognize any changes in section 8(C) where "lot" was replaced with "use."

Thus, it was not unreasonable for the Superior Court to uphold the decision of the Board, finding that the structure of the ordinance as a whole, and of section 8 in particular, provides sufficient support for interpreting the term "use" as meaning "lot." Furthermore, the Superior Court would have been within its discretion in upholding the decision of the Board of Appeals even if it had not interpreted section 8(C) to mean "lot" rather than "use." Because no use, nonconforming or otherwise, had been made of the Lehman lot prior to the passage or revision of the ordinance, no grandfathering would have been appropriate, and, neither section 8(B) nor 8(C) would have provided any support for plaintiffs' position.

The policy of zoning to "abolish nonconforming uses as speedily as justice will permit" mandates that "provisions of a zoning regulation for the continuation of [nonconforming] uses should be strictly construed, and provisions limiting nonconforming uses should be liberally construed." *Inhabs. of Town of Windham v. Sprague*, 219 A.2d 548, 552–53 (Me.1966). The two-fold objective of section 8 is to allow nonconforming uses to continue and to grandfather "nonconforming [lots] of record existing before the effective date of this Ordinance and not adjoined by other land of the same ownership." Construing this provision strictly, we find that the Board of Appeals was correct in denying plaintiffs' appeal of the CEO's refusal to issue them a building permit for the Lehman lot.

The entry is:

Judgment affirmed.

All concurring.