MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2013 ME 111
Docket:      Cum-12-435
Argued       November 21, 2013
Decided:     December 19, 2013

Panel:       SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and
             JABAR, JJ.

WILLIAM A. HORTON et al.

v.

TOWN OF CASCO et al.

MEAD, J.

[¶1]  William A. Horton appeals from a judgment of the Superior Court (Cumberland County, *Cole, J.*) affirming the Town of Casco Zoning Board of Appeals (ZBA), which upheld the Town of Casco Planning Board's approval of AT&T Mobility's application to build a wireless communications tower.  On appeal, Horton argues that a lease agreement between AT&T and Shellie and Robert Symonds creates a new lot that does not meet the minimum space and setback requirements of articles 8.8.1(d)(4) and 4.4.2(C) of the Town of Casco's Zoning Ordinance.  Because we conclude that the lease does not create a new lot and that the setback requirements of article 8.8.1(d)(4) have been satisfied, we disagree and affirm the judgment.

# I. BACKGROUND

[¶2] Article 6.3.2(A)(2) of the Zoning Ordinance requires the ZBA to act in an appellate capacity. Therefore, we review the decision of the Planning Board as the operative decision. *See Mills v. Town of Eliot*, 2008 ME 134, ¶ 14, 955 A.2d 258.

[¶3] On February 8, 2010, the Symondses executed a lease agreement granting AT&T the right to use a 100-by-100-foot portion of their property in Casco to build a wireless communications tower. Shortly thereafter, AT&T submitted an application to the Planning Board seeking approval for the tower construction project. On January 11, 2011, the Planning Board determined that the standards contained in the Zoning Ordinance had been satisfied and approved AT&T's application.

[¶4] Horton, along with Brian and Theresa Cosgrove, appealed the Planning Board's decision to the ZBA. Horton argued that (1) the lease violated both local and state subdivision regulations, (2) the lease violated the minimum lot size requirements of article 4.4.2(C) of the Zoning Ordinance, and (3) the Planning Board failed to adequately address a shared right-of-way to access the leased land and other concerns. The ZBA concluded that (1) it had no jurisdiction to hear the subdivision arguments, (2) there was no violation of article 4.4.2(C) of the Zoning

Ordinance and (3) the board did not err in reviewing the right-of-way or other concerns, and affirmed the decision of the planning board.

[¶5] Following the ZBA's decision, Horton appealed to the Superior Court pursuant to M.R. Civ. P. 80B. In addition to the arguments he made before the ZBA, Horton also argued that article 4.4.2(B) did not allow for the development of cellular towers in a residential zone and renewed his contention that the proposed tower setback violates article 8.8.1(d)(4). After Horton filed his appeal, AT&T requested and was granted leave to intervene in the Superior Court matter.

[¶6] The court determined that Horton was required to appeal the Planning Board's decisions concerning the subdivision ordinance directly to the Superior Court, not to the ZBA. Because the 80B petition was filed after the deadline to appeal the Planning Board decision had passed, the court dismissed Horton's subdivision arguments. The court also concluded that the lease agreement did not create a new and separate lot, accepting AT&T's argument that a legal interest was transferred but that no land was split off. It therefore determined that AT&T's application satisfied the Zoning Ordinance. The court did not find merit in Horton's other arguments and affirmed the ZBA's decision. This appeal followed.

## II. DISCUSSION

[¶7] On appeal, Horton argues that both statute and case law require us to find that the lease created a new lot, and that AT&T's application violates

4

articles 4.4.2(C) and 8.8.1(d)(4) of the Zoning Ordinance. He has abandoned the other challenges to the Planning Board's decision that he made before the ZBA and the Superior Court. In support of his argument, he urges us to use the language of 30-A M.R.S. § 4401(4) (2012), a subdivision regulation statute that allows new lots to be created by lease, as a guide for determining when a new lot is created. The subdivision regulation, however, does not control or apply to the operative terms of the Zoning Ordinance. Further, a determination that the lease does or does not create a new lot will resolve only the question of whether AT&T's application violates article 4.4.2(C) of the zoning ordinance; the operation of article 8.8.1(d)(4) raises a different question requiring a separate analysis. The interpretation of a local ordinance by a planning board is reviewed de novo. *JPP, LLC v. Town of Gouldsboro*, 2008 ME 194, ¶ 8, 961 A.2d 1103.

A.    Article 4.4.2(C) of the Town of Casco Zoning Ordinance

[¶8]    Article 4.4.2(C) requires all lots in residential zones to meet a minimum lot size of 80,000 square feet.[1] Because the leased 10,000-square-foot area does not meet this requirement, if the lease does, as Horton argues, create a new lot, AT&T's application does not conform to the Zoning Ordinance.

---

[1] The Symondses' property is located in a residential zone.

[¶9]   The creation of a new lot requires the "splitting off" of a legal interest of "sufficient dignity."  *Town of York v. Cragin*, 541 A.2d 932, 934 (Me. 1988). We have recognized that a lease may be used to create a new lot.  *Bakala v. Town of Stonington*, 647 A.2d 85, 87-88 (Me. 1994).  A lease, however, is capable of transferring a broad range of legal interests, and it is the nature of the transferred interests, not the type of contract or instrument facilitating the transfer, that will determine whether a new lot is created.

[¶10]   In *Town of Arundel v. Swain*, we held that the right to use campsites for a limited period of time did not create new lots.  374 A.2d 317, 319 (Me. 1977). Instead, we analogized the interest in the campsites as "akin to the renting or occupying of space in an exhibition hall, a parking lot, or a drive-in theater."  *Id.* at 320.  Although we noted that the campsites were "somewhat parceled off, [with] each customer being given a certain space to occupy for a certain period of time," we ultimately concluded that the campground was a single tract of land, and that the campsites were not individual lots.  *Id.* at 320-21.

[¶11]   When the interest transferred is more permanent, we have held that the transfer does create a new lot.  For example, in *Planning Bd. of Town of Naples v. Michaud*, we determined that a developer's sale of timeshares in spaces to park recreational vehicles were easily distinguishable from the temporally limited interests in *Swain*, and concluded that the conveyance of an "indefinite fee interest

6

in a unique and identifiable parcel of land," did create a new lot.  444 A.2d 40, 43 (Me. 1982).

[¶12]  AT&T does not have exclusive rights to the leased property as the purchasers in *Michaud* did, nor was its interest conveyed in a fee, or recorded in a deed or other public record.  Instead, AT&T merely has the right to use and occupy a certain space for a finite period of time, and for the specific and limited purpose of building a wireless communications tower.  This legal interest, which resembles a license, is not sufficient to create a new lot under the Zoning Ordinance, article 2 of which defines a lot as "[a] parcel of land having distinct and defined boundaries and described in a deed, plan or similar legal document."[2]

[¶13]  Because the lease does not create a new lot, the relevant dimensions for the purposes of the Zoning Ordinance are those of the Symondses' property, which easily satisfy the lot size requirements of article 4.2.2(C).

B.     Article 8.8.1(d)(4) of the Town of Casco Zoning Ordinance

[¶14]  Article 8.8.1(d)(4) requires "[t]he center of the tower base [to] be set back from the property line by a distance of at least one-hundred (100%) percent of the total tower height."  To decide whether the setback in AT&T's application

---

[2]  At least one court has come to a similar conclusion.  *See Global Tower, LLC v. Hamilton Twp.*, 897 F. Supp. 2d 237, 245, 256-58 (M.D. Pa. 2012) (holding that a similar lease agreement to install a communications tower inside a 10,000-square-foot area with a lease term of five years did not create a new lot or trigger the application of the bulk regulation requirements).

satisfies this requirement, we must determine whether the term "property line," from which the setback is measured, refers to the property line described in the application—the Symondses' property line—or the boundary of the 10,000-square-foot leased area, as Horton argues. Because the height of AT&T's proposed tower is 150 feet, if the borders of the 10,000-square-foot leased area are considered the property lines instead of the borders of the Symondses' lot, AT&T's application will be in violation of article 8.8.1(d)(4). Contested language in a zoning ordinance "must be construed reasonably and with regard to both the ordinance's specific object and its general structure." *Town of Union v. Strong*, 681 A.2d 14, 18 (Me. 1996).

[¶15] AT&T's application to the Planning Board consistently references the Symondses' property, not the leased 10,000-square-foot leased area, as the property upon which the proposed tower will be built. The Symondses are listed as the owners on the application, their warranty deed is included as evidence of right or title to the proposed building site, and the proposal site plan shows their property lines clearly delineated as the benchmark from which the one-hundred-percent setback is measured.

[¶16] In a case such as this one, where the property within the one-hundred-percent setback zone is wholly owned by the property owner listed in the application, the issue is not the size of the area subject to a lease with the

owner, but rather the entirety of the owner's property upon which the tower is located. This result is consistent with the obvious legislative objective of the Zoning Ordinance for wireless communications towers—in the event of a tower failure, it cannot fall upon any property other than that of the owner under any circumstance. That objective is met here because the application places the proposed tower 213 feet from the Symondses' property line at minimum, well within the one-hundred-percent setback required by article 8.8.1(d)(4).[3]

The entry is:

> Judgment affirmed.

---

**On the briefs and at oral argument:**

> Erika L. Frank, Esq., Law Office of Erika L. Frank, Windham, for appellants William A. Horton, Brian A. Cosgrove, and Theresa E. Cosgrove

> Barry J. Hobbins, Esq., Law Office of Barry J. Hobbins, P.A., Saco, for appellee AT&T Mobility LLC

> The Town of Casco joined in the brief of AT&T Mobility, LLC

Cumberland County Superior Court docket number AP-11-36
FOR CLERK REFERENCE ONLY

---

[3] Requirements that mandate a tower be set back at least one hundred percent of its height are often included in zoning ordinances to prevent towers from being constructed in locations where it could fall onto other structures. *See generally,* Robert Long, *Allocating the Aesthetic Costs of Cellular Tower Expansion: A Workable Regulatory Regime*, 19 Stan. Envtl. L.J. 373, 392-93 (2000) (describing how concerns of tower failure are met with zoning ordinances requiring a one-hundred-percent setback).