STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss.                                   CIVIL ACTION
                                                  Docket No. AP-2022-019

```
                              )
CARTER V. BECKER,             )
                              )
        Petitioner,           )
                              )
    v.                        )
                              )
TOWN OF FREEPORT,             )                   DECISION
                              )
        Respondent,           )
                              )
    and                       )
                              )
MICHAEL DELAHUNT et al.,      )
                              )
        Parties-in-Interest.  )
```

REC'D CUMB CLERKS OFC
JAN 6 '23 AM10:26

Petitioner Carter V. Becker ("Mr. Becker") appeals pursuant to Maine Rule of Civil Procedure 80B from the decision of Respondent Town of Freeport ("the Town") to deny Mr. Becker's application for a building permit. For the following reasons, the Court grants Mr. Becker's appeal.

## I.    Background

Mr. Becker owns the parcel of real property known as 0 Shore Drive, Freeport, Maine ("0 Shore Drive"), by deed dated May 31, 2016, recorded at the Cumberland County Registry of Deeds at Book 33153, Page 170. (R. 151.) When the Town first adopted zoning in 1976, 0 Shore Drive existed as a nonconforming lot formed through the merger of Lots 245 and 246 depicted on the Flying Point Plan dated May 25, 1933, recorded at the Cumberland County Registry of Deeds at Book 21, Page 45. (R. 117.)

By deed dated August 7, 1986, and recorded at the Cumberland County Registry of Deeds, at Book 7312, Page 84 ("the 1986 Deed"), a 5,027 square foot area encompassing a cottage on the abutting lot at 11 Shore Drive ("the Additional Parcel") was released to

the then-owners of 0 Shore Drive. (R. 140-42.) The 1986 Deed was the first recorded document describing the bounds of 0 Shore Drive as they now exist. (R. 149, 586.)

The Town adopted an amended zoning ordinance in May 1986 ("the 1986 Ordinance"). (R. 585.) The effective date of the 1986 Ordinance was June 6, 1986. (R. 719.) The version of the Town's zoning ordinance currently in effect was adopted in 2008 ("the 2008 Ordinance"). (R. 721-1005.)

Section 201(B) of the 1986 Ordinance states: "[N]o lot shall be changed in area after the enactment of this Ordinance so as to reduce the dimensions of any lot below the minimum herein required." (R. 649.) Section 202(D)(1) of the 1986 Ordinance and the same section of the 2008 Ordinance read: "[a] single lot of record which, at the effective date of adoption or amendment of this Ordinance, does not meet the minimum lot size, minimum road frontage and/or minimum shore frontage of the district in which it is located, may be built upon without a variance . . . ." (R. 651, 765.) Section 202(D)(2) of the 1986 Ordinance provides:

> If two or more contiguous lots or parcels are in single ownership of record at the time of adoption or amendment of this Ordinance, or at any time thereafter, and if all or part of the lots do not meet the minimum lot size of this Ordinance, the lands involved shall be considered to be a single parcel for the purposes of this Ordinance, and no portion of said parcel shall be built upon or sold which does not meet the minimum lot size of this Ordinance; nor shall any division of the parcel be made which creates any dimension or area below the requirements of this Ordinance.

(R. 652.)

Section 104 of the 1986 Ordinance and the same section of the 2008 Ordinance define "Lot," in pertinent part, as: "A parcel of land having distinct and defined boundaries and described in a deed, plan or similar legal document." (R. 641, 742.) "Lot of Record" is defined as: "A parcel of land, a legal description of which or the dimensions

of which are recorded on a document or map on file with the County Registry of Deeds." (R. 642, 742.)

On April 7, 2021, Mr. Becker applied to the Town's Code Enforcement Officer ("the CEO") for a building permit to construct a single-family dwelling at 0 Shore Drive. (R. 1-9.) At the time, the lot at 0 Shore Drive was vacant. (R. 1.) On August 5, 2021, the CEO denied Mr. Becker's application. (R. 10.) Mr. Becker appealed the denial to the Town's Board of Appeals ("the Board"). (R. 54.) The Board held a public hearing on December 6, 2021. (R. 283-483.)

On May 2, 2022, the Board voted to deny the appeal and issued its written decision and findings of fact ("the Decision").[1] (R. 572-580, 584-89.) Although Mr. Becker appealed the CEO's decision on four grounds, the Board addressed only the first ground. (R. 584, 588.) The Board found that the 1986 Deed created a new lot at 0 Shore Drive, which was not a lot of record as of the effective date of the 1986 Ordinance. (R. 587.) The Board found, and Mr. Becker concedes, that 0 Shore Drive does not satisfy the minimum lot size or minimum land area per dwelling unit requirements for its district under the 1986 Ordinance or the 2008 Ordinance. (R. 585-86.) Thus, the Board concluded that 0 Shore Drive is unlawfully nonconforming and unbuildable. (R. 572-580, 584-89.) Mr. Becker appeals the Decision.

## II.    80B Standard

The Superior Court's jurisdiction to hear Rule 80B appeals is a function of statute. M.R. Civ. P. 80B(a); *Norris Family Assocs., LLC v. Town of Phippsburg*, 2005 ME 102, ¶ 13, 879 A.2d 1007. The court reviews decisions of a board for errors of law, abuse of

---

[1] In the Decision, the Board stated: "[T]he standard of review is whether, on the basis of the evidence before the Board of Appeals, the application complies with the requirements of the Zoning Ordinance or any other applicable ordinance." (R. 586.)

discretion, or findings not supported by substantial evidence in the record. *Aydelott v. City of Portland*, 2010 ME 25, ¶ 10, 990 A.2d 1024. "Substantial evidence is evidence that a reasonable mind would accept as sufficient to support a conclusion." *Toomey v. Town of Frye Island*, 2008 ME 44, ¶ 12, 943 A.2d 563 (quoting *Sproul v. Town of Boothbay Harbor*, 2000 ME 30, ¶ 8, 746 A.2d 368). The court may not substitute its judgment for that of the Board. *Tarason v. Town of South Berwick*, 2005 ME 30, ¶ 6, 868 A.2d 230. Petitioners bear the burden "of showing that the record evidence compels a contrary conclusion." *Id.*

The interpretation of a local ordinance is a question of law, which the court reviews de novo. *Priestly v. Town of Hermon*, 2003 ME 9, ¶ 7, 814 A.2d 995. When interpreting an ordinance, the court first looks at "the plain meaning of its language," and if the ordinance is clear, the court need not look beyond the language. *21 Seabran, LLC v. Town of Naples*, 2017 ME 3, ¶ 12, 153 A.3d 113.

## III. Discussion

There appears to be disagreement among the parties regarding the operative decision to be reviewed. Additionally, Mr. Becker makes a preliminary argument that the Additional Parcel was adversely possessed and merged with 0 Shore Drive before 1986 and that the Board is precluded by a 1987 decision from "relitigating" this issue. Accordingly, the Court will address those issues before proceeding to Mr. Becker's assertions of error.

### A. Operative Decision

Whether the decision that the Superior Court must review is the decision of the Board of Appeals or the Code Enforcement Officer depends on the review the Board of Appeals is authorized to perform and the review the Board of Appeals conducted in a particular case. *Grant v. Town of Belgrade*, 2019 ME 160, ¶ 8, 221 A.3d 112 (quoting *Gensheimer v. Town of Phippsburg*, 2005 ME 22, ¶ 7, 868 A.2d 161). If the Board of Appeals

undertook de novo review of the Code Enforcement Officer's decision, then the decision of the Board of Appeals is the operative decision, but if the Board of Appeals acted only in an appellate capacity, then the Code Enforcement Officer's decision is the operative decision. *Id.*

In the Decision, the Board stated: "[T]he standard of review is whether, on the basis of the evidence before the Board of Appeals, the application complies with the requirements of the Zoning Ordinance or any other applicable ordinance." (R. 586.) Section 601(G)(4)(a) of the 2008 Ordinance authorizes the Board to hear additional evidence on appeal. (R. 956.) The Board did, in fact, hear additional evidence and made its own findings of fact and conclusions of law. Therefore, the Board was authorized to and did in fact conduct a de novo review of the permit application. The Board's decision is the operative decision to be reviewed by this Court.

### B. Adverse Possession

Mr. Becker argues that the Additional Parcel was adversely possessed by his predecessors in interest before 1986, and that the Board's 1987 decision to grant a variance to 11 Shore Drive precludes it from denying that fact. The Board did not issue written findings regarding the 1987 decision, but Mr. Becker highlights a statement in the minutes regarding the application for a variance as evidence that the Board found that the Additional Parcel had been merged with 0 Shore Drive by adverse possession. The statement in issue reads: "The odd shape of the lot [at 11 Shore Drive] came about because of the placement of two cottages very close to each other, and a portion of the lot was later removed by adverse possession." (R. 125.)

This argument is unavailing. First, the Board's discussion and decision to grant the variance concerned 11 Shore Drive, not 0 Shore Drive. Second, the Board's statement regarding adverse possession was not a finding or conclusion of the Board. It was merely

a statement of an individual Board member recorded in the minutes. Even if the Board had made this finding, the Board does not have jurisdiction to decide an adverse possession claim. Finally, there is no judicial determination of adverse possession in the Record, nor has any party requested that the Court take judicial notice of any ruling. Accordingly, this argument merits no further discussion.

## C. The Decision

Regarding the substance of the Decision, Mr. Becker argues: (1) that the Board's interpretation of the 1986 Ordinance as prohibiting creation of new nonconforming lots was erroneous, (2) that the Board erred as a matter of law when it concluded that the conveyance of the Additional Parcel created a "new lot," and (3) that the Board erred as a matter of law when it concluded that the merger of the Additional Parcel and 0 Shore Drive caused 0 Shore Drive to lose its status as a nonconforming lot of record.

### i. Whether the 1986 Ordinance Prohibits New Nonconforming Lots

Mr. Becker argues that the 1986 Ordinance does not prohibit the creation of new nonconforming lots because it does not do so expressly.

It is abundantly clear from the 1986 Ordinance as a whole that it does, in fact, prohibit new nonconforming lots and increases in nonconformity. If the 1986 Ordinance permitted creation of new nonconforming lots, the sections of the Ordinance regarding dimensional requirements and variances would serve no purpose. Indeed, the overarching purposes of zoning would be defeated if Mr. Becker were correct. *Cf. Rockland Plaza Realty Corp. v. City of Rockland*, 2001 ME 81, ¶ 17, 772 A.2d 256 ("Nonconforming uses are a thorn in the side of proper zoning and should not be perpetuated any longer than necessary. The policy of zoning is to abolish nonconforming uses as swiftly as justice will permit." (quoting *Mayberry v. Town of Old Orchard Beach*, 599 A.2d 1153, 1154 (Me. 1991))). The Court agrees with the Town's interpretation of the 1986

Ordinance as prohibiting the division of nonconforming lots and the creation of new nonconforming lots.

### ii. Whether the 1986 Deed Created a New Lot

Next, Mr. Becker argues that the Board erred as a matter of law in its conclusion that the 1986 Deed created a "new lot" at 0 Shore Drive. The Ordinance does not specify how a "new lot" is formed. The Law Court has stated, however: "The creation of a new lot requires the 'splitting off' of a legal interest of 'sufficient dignity.'" *Horton v. Town of Casco*, 2013 ME 111, ¶ 9, 82 A.3d 1217 (quoting *Town of York v. Cragin*, 541 A.2d 932, 934 (Me. 1988)).

The conveyance of the Additional Parcel was a "splitting off." Moreover, the Additional Parcel independently satisfies the definition of "lot" in the 1986 Ordinance.[2] The Additional Parcel was, therefore, a new lot, and the division of 11 Shore Drive violated the 1986 Ordinance.

By operation of Section 202(D)(2) of the 1986 Ordinance, the Additional Parcel immediately merged with the lot at 0 Shore Drive because 0 Shore Drive and the Additional Parcel were under common ownership. The Town argues that the merged lot (0 Shore Drive plus the Additional Parcel) was also a new lot. This argument is grounded in the definitions of "lot" and "lot of record" in the 1986 Ordinance: because the merged lot has different boundaries and dimensions than the pre-1985 lot at 0 Shore Drive, it must be a new lot. As a new nonconforming lot, the Town argues, 0 Shore Drive has been unbuildable since execution of the 1986 Deed.

However, the merger did not involve a "splitting off." In fact, fewer lots existed after the merger than before the merger. The merged lot at 0 Shore Drive may be slightly

---

[2] The 1986 Ordinance defines "lot" as "[a] parcel of land having distinct and defined boundaries and described in a deed, plan or similar legal document." (R. 641.)

different than the pre-1985 lot, but it is not new. The Town's interpretation of the definitions of "lot" and "lot of record" is overly technical and does not square with other provisions of the Ordinance, including the merger provision.[3]

The Town's conclusion is erroneous as a matter of law because it rests on a misinterpretation of the 1986 Ordinance and because the merger of the Additional Parcel and 0 Shore Drive did not involve a "splitting off" of any legal interest.

### iii. Whether Merger with the Additional Parcel Caused 0 Shore Drive to Lose its Status as a Buildable Nonconforming Lot of Record

Nor did the merger otherwise cause 0 Shore Drive to lose its nonconforming "lot of record" status under the 1986 Ordinance. The merger itself could not violate the Ordinance because it happened by operation of the Ordinance.

Moreover, nothing in the 1986 Ordinance provides that a nonconforming lot of record loses its status as lawfully nonconforming by merging with another nonconforming lot. Section 202(D)(2) prohibits redivision of the lot or building separately on portions of the merged lot, but it does not prohibit building on it as a single nonconforming lot.

The Town argues that because Section 202(D)(1) permits building without a variance on a single *lot of record*, whereas Section 202(D)(2) provides that merger of two undersized lots results in a single *parcel*, a merged lot is not buildable. The Town implies that Section 202(D)(2) used the term parcel instead of lot of record to convey that a lot of record loses its lot of record status through merger.

The more logical reason for the use of the term "parcel" is that "parcel" is broad enough to encompass all possible types of mergers, whereas "lot of record" is too narrow.

---

[3] As discussed in more detail in the following section, under the Town's interpretation, merger of two nonconforming lots of record would also create a new, unbuildable lot if the merged lot was still undersized. This result is contrary to the merger provision and the purposes of zoning.

If two unlawfully nonconforming lots merged and the resulting parcel was still undersized, the parcel would not be a buildable lot of record. If the 1986 Ordinance was meant to convey a loss of lot of record status by merger, that would have been accomplished by other language.

The Town could not reasonably argue that the merger of two nonconforming lots of record would cause the entire merged parcel to become unbuildable. The only difference here is that the Additional Parcel was an unlawfully nonconforming lot, not a lot of record. Even still, a decrease in 0 Shore Drive's nonconformity would further the purposes of the Ordinances and zoning generally. The fact that the division of 11 Shore Drive was unlawful may impact 11 Shore Drive's status, but it is illogical to visit the consequences of the unlawful division on 0 Shore Drive when the 1986 Ordinance does not prohibit (and, in fact, encourages) the addition of land to a nonconforming lot. The Town's interpretation of the 1986 Ordinance on this issue is unreasonable.

The parties and parties-in-interest discuss *Grant v. Town of Belgrade*, 2019 ME 160, 221 A.3d 112, *Day v. Town of Phippsburg*, 2015 ME 13, 110 A.3d 645, and *Nyczepir v. Town of Naples*, 586 A.2d 1254 (Me. 1991). None is truly analogous to this case. Importantly, none involved a landowner who sought to build on a vacant and undivided merged lot.

*Grant*, in which the Law Court stated that "grandfathering clauses such as those in the Town's Ordinances allow landowners to continue the reasonable investment-backed expectations they had when they bought their properties, but they do not to permit expansions or changes to nonconforming conditions indefinitely" lends some support to Mr. Becker's argument. 2019 ME 160, ¶ 24, 221 A.3d 112. Its value is limited, however, by the fact that it concerned a nonconforming *use* and did not involve a merger.

In *Day*, the Law Court held that "the grandfathered status of a merged nonconforming lot is permanently lost when that merged lot is unlawfully divided." 2015

ME 13, ¶ 18, 110 A.3d 645. Similarly, in *Nyczepir*, the Law Court upheld the denial of a building permit for a nonconforming lot because the nonconforming lot had previously merged with a conforming lot before being unlawfully redivided and sold. 586 A.2d at 1255-56. Mr. Becker does not contend that the Additional Parcel is divisible or separately buildable. It is possible that 11 Shore Drive lost its status as a nonconforming lot of record when it was unlawfully divided, but that issue is not before the Court.

In sum, the Board erred as a matter of law in its interpretation of the Ordinance and its conclusion that 0 Shore Drive lost its status as a buildable nonconforming lot of record when it merged with the Additional Parcel. Accordingly, the Court vacates the Board's Decision. However, because the CEO asserted other grounds for the denial of Mr. Becker's application that the Board did not address in the Decision, further proceedings before the Board will be necessary.

## IV. Conclusion

For the foregoing reasons, the Decision is vacated.

The entry is:

Petitioner Carter V. Becker's appeal is GRANTED. Respondent Town of Freeport's May 2, 2022 Decision is VACATED. This matter is REMANDED to the Board of Appeals for further proceeding consistent with this Decision.

The Clerk is directed to incorporate this Decision into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: _1/5/2023_

_____
MaryGay Kennedy, Justice
Maine Superior Court